344 So.2d 360 (1977)
STATE of Louisiana
v.
Byron de la BECKWITH.
No. 58586.
Supreme Court of Louisiana.
February 28, 1977.
Rehearing Denied April 22, 1977.
*365 Travis Buckley, Laurel, Arthur A. Lemann, III, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Byron de la Beckwith was charged by bill of information with the crime of knowingly transporting, carrying and conveying dynamite within the boundaries of this state without a license or permit in violation of La.R.S. 40:1471.8. After trial by jury, he was found guilty as charged. Subsequently, he was sentenced to serve five years in the custody of the Department of Corrections. On appeal, he relies upon sixteen assignments of error for reversal of his conviction and sentence.[1] We will consider these assigned errors in the order in which they appear in the record.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred in overruling his motion to quash on the ground that La.R.S. 40:1471.18 is unconstitutional.
La.R.S. 40:1471.1-1471.22 is a comprehensive statute regulating explosives. La.R.S. 40:1471.8, which defendant was charged with having violated, provides that it shall be unlawful for any person to transport any explosives into this state or within the boundaries of this state without a license or permit. La.R.S. 40:1471.18, which establishes the penalty for that offense, states:
Any person who manufactures, purchases, keeps, stores, possesses, distributes, or uses any explosive with the intent to harm life, limb or property, shall, upon conviction, be guilty of a felony and liable to a fine of not less than five thousand dollars nor more than ten thousand dollars or imprisonment in the state prison not less than five years nor more than ten years, or both. Any person who shall in an application for a license or permit as herein provided, knowingly make a false statement, or who shall obtain explosives under a false statement, pretense or identification, or who shall knowingly otherwise violate any provisions of this Part, or regulation promulgated pursuant to this Part, shall, upon conviction, be guilty of a felony and liable to a fine of not less than two hundred fifty dollars nor more than one thousand dollars or imprisonment in the state prison not less than one year nor more than five years, or both. Possession of explosives under circumstances contrary to the provisions of this Part or such regulations shall be prima facie evidence of an intent to use the same for destruction of life, limb or property. Conviction under this section of any person holding a license or permit shall effect cancellation thereof.
Defendant urges that La.R.S. 40:1471.18 is unconstitutional because it states that possession of explosives in violation of La.R.S. 40:1471.1-1471.22 constitutes prima facie evidence of an intent to use the explosives for destruction of life, limb, or property. He contends that a person may possess explosives for several other reasons other *366 than for the intentional destruction of life, limb or property and, accordingly, that the correlation between illegal possession and possession with intent to destroy life, limb or property is irrational.
We find it unnecessary to pass upon defendant's contention because defendant was not charged with possession of explosives with intent to harm life, limb or property. The bill of information charged defendant with knowingly transporting explosives without a license or permit in violation of La.R.S. 40:1471.8. Possession of explosives with the intent to harm life, limb or property is in violation of La.R.S. 40:1471.18 and carries a heavier penalty.
While La.R.S. 40:1471.18 also establishes the penalty for violation of La.R.S. 40:1471.8 (as well as other violations of La.R.S. 40:1471.1-1471.22 and the regulations promulgated thereto), it is clear that possession of explosives with intent to harm life, limb or property and knowingly transporting explosives without a license or permit are two separate and distinct offenses. Further, our review of the record convinces us that the question of defendant's intent to harm life, limb or property and the rule that his unlawful possession of explosives would be prima facie evidence of such intent, was carefully kept from the jury's consideration. At a hearing held on December 6, 1974, the trial judge emphasized to the prosecutor and defense counsel that defendant was not charged with possession with intent to harm life, limb or property, that any testimony relative to such intent would result in a mistrial, and that if the state made any comments dealing with intent to harm life, limb or property these comments would be stricken. A review of the state's opening statement indicates its intention not to offer any evidence regarding such intent. Finally, the trial judge admonished the jury, during the state's closing argument, that since defendant was charged with knowingly transporting explosives into the state without a license and not with possessing explosives with intent to harm life, limb or property, it should disregard all comments regarding such intent.
The trial judge properly overruled defendant's motion to quash on the ground that La.R.S. 40:1471.18 is unconstitutional. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
Defendant filed a motion to quash the information on the grounds of double jeopardy and collateral estoppel, asserting that he had been acquitted in federal court on January 21, 1974 on essentially the same charges for which he was being prosecuted by the state. The trial judge denied the motion to quash, ruling that defendant's acquittal in the federal charges did not bar his prosecution for violation of state law. Defendant assigns this ruling as error.
The trial judge's ruling was correct. The prosecution by the state did not place defendant twice in jeopardy for the same offense as proscribed by the federal and Louisiana constitutions. U.S.Const. amend. 5; La.Const. art. 1, § 15 (1974). In Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), the accused was tried and convicted of robbery of a federally-insured bank in the state court after he had been acquitted on federal charges for the same offense. The United States Supreme Court held that the subsequent trial of defendant in state court did not deprive him of due process of law under the fourteenth amendment to the United States Constitution.[2] Likewise, in Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), the Court held that a federal prosecution on the same charge on which the accused had been convicted in state court did not place the defendant twice in jeopardy for the same offense under the *367 fifth amendment. Together, these cases "teach that successive prosecutions by different sovereignties do not violate the double jeopardy clause of the Fifth Amendment and are therefore constitutionally permissible." United States v. Jones, 174 U.S.App.D.C. 34, 527 F.2d 817 (1975).
In Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), the Supreme Court held that the state and a municipality were not separate sovereignties. Accordingly, because the accused had been convicted in municipal court for violation of a city ordinance, a second trial in state court for the same acts (which also violated state law) constituted double jeopardy. Bartkus and Abbate were distinguished, but not overruled in Waller, and there is no question as to their continuing validity.[3] The holdings in Bartkus and Abbate are codified in our Code of Criminal Procedure, which specifically provides that double jeopardy does not apply to a prosecution under a law enacted by the Louisiana legislature if the prior jeopardy was in a prosecution under the laws of another state or the United States. La.Code Crim.P. art. 597, as amended, La. Acts 1972, No. 648, § 1. Therefore, defendant's plea of former jeopardy is without merit.
Nor is the state prosecution barred by collateral estoppel. The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit" (emphasis added) and is embodied in the fifth amendment guarantee against double jeopardy. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Since the first prosecution was in federal court, identity of parties, an essential requirement of collateral estoppel, is lacking. Cf. State v. Hill, 340 So.2d 309 (La.1976). This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 3
Three days before the trial was scheduled to begin, defendant filed a motion for change of venue. In the motion, he alleged that on account of the publicity attending his arrest and pending trial there existed such public prejudice against him that a fair and impartial trial could not be obtained in Orleans Parish.
At the hearing on the motion for change of venue held on May 15, 1975, the day of the trial, defendant produced in support thereof an article concerning the case in the previous day's edition of the New Orleans States-Item. He also argued that local redio and television stations had broadcast stories about the trial the night before, and the trial judge issued a subpoena to all news media asking them to transcribe the broadcasts relative to the trial of the case. The defendant offered no other evidence in support of his motion. The trial judge, rather than rule on the motion for change of venue immediately, then conducted, with defendant's acquiescence, a preliminary, or "dry run," voir dire examination of fifteen prospective jurors. He proceeded to question them concerning their knowledge of the case through pretrial publicity for the purpose of determining whether a change of venue was warranted. Of the fifteen prospective jurors, only one stated that she had read the States-Item article the night before. Four other prospective jurors evidenced a slight knowledge of the case through pretrial news coverage, and the remaining ten answered that they had never heard or read about defendant until they were summoned as prospective jurors. At the conclusion of this "dry run" voir dire examination, the trial judge denied the motion for change of venue. Defendant assigns his ruling as error.
The grounds for change of venue are set forth in article 622 of the Code of Criminal Procedure as follows:

*368 A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
To warrant a change of venue, the burden is upon the accused to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. Article 622 requires a showing of more than mere knowledge by the public of facts surrounding the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. State v. Berry, 329 So.2d 728 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Dillard, 320 So.2d 116 (La.1975); State v. Flood, 301 So.2d 637 (La.1974); State v. Richmond, 284 So.2d 317 (La.1973).
The granting or denial of a motion for change of venue rests within the sound discretion of the trial judge, and his ruling denying the motion will not be disturbed unless the evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. Berry, supra; State v. Dillard, supra.
Under the evidence presented to support the motion for change of venue, we cannot say that the trial judge abused his discretion. At the hearing on the motion, defendant produced only one news article, the States-Item account published the day before the trial, as evidence of pretrial publicity.[4] Although he argued at the hearing on the motion for change of venue that there was other news coverage of the case, he offered no other evidence in support of his motion and relied solely on the existence of publicity. Of importance, too, is the fact that defendant was arrested in September, 1973, more than thirty months prior to the trial. Finally, the prospective jurors whom the trial judge questioned during the "dry run" voir dire examination displayed, as a whole, either little or no familiarity with the case. Hence, the trial judge reasonably concluded that defendant had not satisfied his burden of proving that a fair and impartial trial could not be obtained in the parish.
In his brief, defendant also asserts that the procedure used by the trial judge to determine whether a change of venue was justified denied him the right to show that pretrial publicity had prejudicially influenced the jury.
This contention is without substance. In State v. Bell, 315 So.2d 307 (La.1975), we held that the trial judge therein committed reversible error by his refusal to issue defendants' requested subpoenas of news representatives and other witnesses or permit the introduction of evidence of the extensive publicity. In contrast to Bell, the trial judge in this case permitted the introduction in evidence of pretrial publicity and even sua sponte issued subpoenas for the transcription of news broadcasts. The record does not show that defendant sought to introduce other evidence in support of his motion but was prevented from doing so by the trial judge. Further, in Bell the "dry run" voir dire failed to elicit testimony concerning the extent and nature of publicity or the community's attitude toward the defendants and consisted exclusively of questions directed at the prospective jurors' ability to render a fair and impartial verdict. We held in Bell that such questioning was unsatisfactory because, under the concept of change of venue in Code of Criminal Procedure article 622, a defendant may be *369 entitled to a change of venue even though it would be possible to select a jury whose members are not subject to a challenge for cause. See also State v. Berry, supra. Here, however, the trial judge questioned the prospective jurors extensively concerning their awareness of the extent and nature of pretrial publicity and endeavored to ascertain the attitude of the community toward the defendant.
We conclude, therefore, that defendant was not deprived of any right or opportunity to show that a fair and impartial jury could not be obtained in Orleans Parish. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 4
The bill of information originally filed charged defendant with "wilfully and unlawfully" transporting an explosive substance, dynamite, within the boundaries of the state. On the day of the trial, but prior to the voir dire examination, the state moved to amend the bill of information by the insertion of the words "and knowingly" so that the bill of information would read as follows:
Byron de la Beckwith . . . did wilfully and unlawfully and knowingly transport, carry and convey, within the boundaries of this State, an explosive substance, to wit: dynamite, without benefit of license or permit as required by law. (Emphasis added.)
Defendant objected to the amendment, and the trial judge overruled his objection. Defendant assigns his ruling as error.
The amendment merely conformed the bill of information to the penalty provision, contained in La.R.S. 14:4071.18, of the crime charged. La.R.S. 14:4071.18 states that the penalty is imposed upon persons who "knowingly" violate any provision of La.R.S. 40:1471.1-1471.22.
An indictment may be amended with respect to a defect of form or substance before the trial begins. La.Code Crim.P. art. 487 (1966). In a jury trial, the trial commences when the first prospective juror is called for examination. La.Code Crim.P. art. 761 (1966). As we previously stated, the instant information was amended before commencement of the voir dire examination. Therefore, whether the defect be considered one of form or of substance, amendment of the bill of information with respect to such defect was properly allowed. State v. Hubbard, 279 So.2d 177 (La.1973); State v. Royal, 255 La. 617, 232 So.2d 292 (1970). Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for a thirty days' continuance filed after the trial judge permitted the state to amend the bill of information by insertion of the words "and knowingly."
Under article 489 of the Code of Criminal Procedure, the court shall grant a continuance on motion of the defendant if the defendant has been prejudiced in his defense on the merits by the amendment of the indictment. It is incumbent upon the defendant to show in what respect his defense has been prejudiced by amendment of the indictment. State v. Brown, 338 So.2d 686 (La.1976); State v. Gibson, 322 So.2d 143 (La.1975); State v. Hubbard, 279 So.2d 177 (La.1973).
In the motion for a continuance, defendant argued that addition of the words "and knowingly" changed the character of his defense, and that he would need additional time to produce a witness who would testify that he did not knowingly commit the crime charged. As the trial judge states in his per curiam to this assignment of error, however, it is extremely doubtful that defendant had been unaware that lack of knowledge was a defense to the charge. La.R.S. 40:1471.18 plainly states the penalty for conviction of the crime charged (La.R.S. 40:1471.8) is imposed upon a person who shall "knowingly . . . violate" (emphasis added) any provision of La.R.S. 40:1471.1-1471.22. Like the trial judge, we cannot believe that defendant was ignorant of La.R.S. 40:1471.18 especially in light of the fact that he had previously *370 filed a motion to quash in which he stated that the bill of information charging that he "did wilfully and unlawfully" commit the offense charged was fatally defective because not in the language of the statute.
The purpose of the continuance when an amendment to the indictment is made is to protect the defendant against surprise and prejudice which might result from such an amendment. La.Code Crim.P. art. 489, Official Revision Comment (a). We find that defendant was not surprised, nor his defense prejudiced, by the amendment. Accordingly, the trial judge did not err in denying the motion for a continuance. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 7
In this assignment of error, defendant contends that the trial judge erred in denying his motion for production of the prior voting records of prospective jurors.
Defendant alleges that the Office of the District Attorney in Orleans Parish prepares a compilation of the voting records of prospective jurors in previous trials. Defendant contends in his brief that through exclusive possession of the compilation of voting records, the state is able systematically to exclude lenient jurors from petit jurys, in violation of defendant's rights under the sixth and fourteenth amendments to the United States Constitution. On the other hand, the state contends that the voting records of prospective jurors are a part of its work file and therefore not subject to defendant's inspection.
We need not reach the question of whether or not the district attorney's compilation of the voting records of prospective jurors in previous trials is part of his work file and therefore privileged[5] as the record before us is insufficient to show that the trial judge abused his discretion in denying defendant's motion. There is no evidence in the record that the state ever intended or did use the voting records of the prospective jurors in this case. Nor is there any evidence in the record showing that such information was not available to defendant through independent means. Moreover, defendant's motion for production of the voting records was made orally immediately prior to the voir dire examination and was, in our view, tardy. Because of the lack of showing in the record, and in view of the circumstances in which the motion was made, we cannot say that the trial judge abused his discretion in denying defendant's motion for production of the state's compilation of prospective jurors' voting records.[6] This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 8
Defendant alleges that the trial judge erred in denying his motion to suppress and in overruling his objections to the introduction in evidence of various items of evidence seized from his person and from his automobile. His motion to suppress was grounded on the allegation that the warrantless searches of his person and vehicle violated his rights under the federal and state constitutions. U.S.Const. Amend. 4; La.Const. art. 1, § 5 (1974).
At the suppression hearing held on November 15, 1974, Agent Thompson Webb of the Federal Bureau of Investigation in *371 Jackson, Mississippi, testified that he had received information from a reliable confidential informant that defendant was coming to New Orleans on or about September 27, 1973 for the purpose of either bombing the residence of or shooting a New Orleans civic leader. He testified that he relayed this information to Agent George Carter, a special agent with the F.B.I. in New Orleans. Agent Carter in turn reported the information to Sgt. Bernard Windstein, assigned to the Intelligence Section of the New Orleans Police Department.
Sgt. Windstein testified at the suppression hearing in the federal district court. The state and defendant had stipulated prior to the hearing on the motion to suppress in state court that the testimony at the federal hearing would be the same as that in state court. A transcript of the federal hearing has been made part of the record on appeal. Sgt. Windstein testified that he received information from Agent Carter on September 18, 1973 that defendant would be arriving in New Orleans with an explosive device, commonly called a time bomb, which he intended to place in a New Orleans residence. By and on September 26, 1973, Sgt. Windstein, who had remained in contact with Agent Carter, had accumulated more detailed information, learning that defendant would be arriving in the Slidell area via Interstate 10 en route to New Orleans sometime after dark on September 26; that defendant would be driving his own automobile, a 1968 Oldsmobile 98, white over blue, with two radio antennae on the rear (one of them a large whip-type that was tied down); that defendant's automobile would bear an improper, substituted license plate numbered 61D2390; and that defendant would be carrying a fully loaded .45 caliber automatic pistol in the front portion of his trousers waistband. Sgt. Windstein received photographs of defendant as well. Agent Carter also gave Officer Windstein more specific information regarding the bomb and timing device. Agent Carter testified at the suppression hearing in federal court and corroborated Officer Windstein's testimony.
On the evening of September 26, Sgt. Windstein was informed by Agent Carter that defendant would be arriving in New Orleans about midnight. At nine o'clock, Officer Windstein and several other officers from the New Orleans Police Department staked out at various locations along the entrance to Orleans Parish at Interstate 10 and U.S. Highway 190 near Slidell. At about 11:55 o'clock that night, the anticipated time of arrival, Officers O'Sullivan and Loycano spotted an automobile entering Orleans Parish at Interstate 10 and U.S. 190 near Slidell. The vehicle, including the license plate, matched perfectly the description of it that Officer Windstein had obtained from Agent Carter. The police radioed Sgt. Windstein, who was stationed in his police car at a nearby location. Sgt. Windstein signaled for the vehicle to pull aside and stop. Defendant stopped his car, got out, and walked hurriedly over to Officer Windstein's police car. Sgt. Windstein recognized him immediately. Officer John Evans, who accompanied Officer Windstein and also testified at the suppression hearing in federal court, ordered him to stop and to place his hands on the police car. Sgt. Windstein frisked defendant and detected and seized a fully loaded .45 automatic pistol. Officer Evans formally placed defendant under arrest for carrying a concealed weapon, and advised him of his Miranda rights. Officer Evans then asked defendant whether he had any other weapons in the car, to which defendant replied in the affirmative.
Sgt. Windstein testified that he was fearful that the bomb in the car would detonate. Inspecting the vehicle from the outside, he observed a wooden box, partially covered by a clothing bag, and a map of New Orleans on the front seat. He summoned the emergency division of the police department which removed the box from the car. The box contained several sticks of dynamite, a time clock, and numerous wires. The bomb's dismantling was photographed, and the photograph admitted into evidence, as well as the gun and gun clip found on defendant's person and the bag, box, parts of the bomb, map, and other *372 weapons discovered pursuant to a search of defendant's car.
Sgt. Windstein and other officers in the New Orleans Police Department had not independently verified the information received from Agent Carter. Nor had defendant been kept under surveillance between September 18 and September 26. Probable cause for obtaining a warrant for defendant's arrest may not, therefore, have existed prior to September 26. When the New Orleans police, however, spotted defendant's car arriving en route to New Orleans at the time Agent Carter told them it would arrive, and fitting Agent Carter's description of it in every detail, their information was confirmed. At that point, the police clearly had reasonable cause for an investigatory stop of defendant's vehicle. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); La.Code Crim.P. art. 215.1(A); State v. Robinson, No. 58,525, 342 So.2d 183 (La.1977); State v. Perique & Merritt, 340 So.2d 1369 (La.1976); State v. Dixon, 337 So.2d 1165 (La.1976); State v. Cook, 332 So.2d 760 (La.1976); State v. Rogers, 324 So.2d 403 (La.1975); State v. Jefferson, 284 So.2d 882 (La.1973). The police officers were also aware that defendant was carrying a fully loaded .45 caliber automatic pistol. Thus, after he withdrew from his car, they were justified in restraining him and in conducting a "frisk" of his outer clothing. The gun and gun clip found on defendant's outer clothing as a result of the frisk were lawfully seized and properly admitted in evidence. Terry v. Ohio, supra; Adams v. Williams, supra; La.Code Crim.P. art. 215.1(B) and (C).
The evidence seized from defendant's automobile was also properly admitted in evidence. One of the few welldelineated exceptions to the warrant requirement of the fourth amendment is that a moving vehicle may be searched without a warrant where there exists probable cause to search the vehicle and where exigent circumstances make the securing of a search warrant impracticable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Hearn, 340 So.2d 1365 (La.1976); State v. Gordon, 332 So.2d 262 (La.1976); State v. Tant, 287 So.2d 458 (La.1974). By the time defendant was placed under arrest, Agent Carter's information, now including his report that defendant would be carrying a pistol, was verified. Moreover, defendant had told Officer Evans that there were other weapons in his car. Probable cause to search the vehicle for the time bomb and other weapons and evidence of crime undeniably existed. Further, in view of the danger that the time bomb in the car would detonate, exigent circumstances existed that made the securing of a warrant to search the car not only impracticable but even foolhardy.
The trial judge did not err in denying the motion to suppress the items seized from defendant's person and his vehicle and in overruling defendant's objection to their admission in evidence. Assignment of Error No. 8 has no merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends that the trial judge erred in admitting nineteen of the state's exhibits in evidence on the ground that the sole purpose of admitting these items in evidence was to inflame the jury.
Of the nineteen items admitted, thirteen were admitted without objection from defendant. Article 841 of the Code of Criminal Procedure provides that an error or irregularity cannot be availed of after verdict unless it was objected to at time of occurrence. In accordance therewith, we have consistently held that an objection not contemporaneously raised in the lower court or ruled on by the trial judge cannot be availed of on appeal. State v. Finley, Bindom & Scott, 341 So.2d 381 (La.1976); State v. Phanor, 325 So.2d 579 (La.1976); State v. Knight, 323 So.2d 765 (La.1975); State v. Burgy, 320 So.2d 175 (La.1975). Defendant objected to the admission of five of the six remaining items on the ground that they were not sufficiently identified *373 rather than on the ground that they were inflammatory. Article 841 of the Code of Criminal Procedure also states that defendant must make known to the court the grounds for his objection. Accordingly, a new basis for an objection cannot be raised for the first time on appeal. State v. Marks, 337 So.2d 1177 (La.1976); State v. Powell, 325 So.2d 791 (La.1976); State v. Forbes, 310 So.2d 569 (La.1975). Since defendant did not raise the ground of inflammatory nature of the evidence at trial, that issue is not properly before us for review.
Defendant arguably objected to one item of evidence, found under the front seat of his car, on the ground that it was inflammatory (S-7). The transcript, however, does not clearly reveal its identity, nor does defendant explain with any degree of particularity why the evidence would have inflamed the jury. We cannot, therefore, say the trial judge erred in admitting it in evidence. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 10
Defendant called Agent Thompson Webb, Special Agent of the Federal Bureau of Investigation in Jackson, Mississippi, to testify. Agent Webb had provided Agent Carter with the information that led to defendant's arrest. The Chief of the Criminal Division of the United States Attorney's Office for the Eastern District of Louisiana, Assistant Attorney General Cornelius Heusel, had accompanied Agent Webb to the trial and was present in the courtroom. As defense counsel began to question Agent Webb with regard to his duties as an F.B.I. agent, Mr. Heusel interrupted and informed the trial judge that Agent Webb was voluntarily present in court without a subpoena and that before he could testify he would require from defendant a proffer of Agent Webb's expected testimony and subsequent authorization from the Attorney General's office. Defendant asked Agent Webb a few further questions, but the trial judge ruled that the witness did not have to answer and that he be excused. Defendant assigns this error to the court's ruling.
Absent defendant's compliance with certain procedures, applicable federal regulations promulgated by the Department of Justice prohibited Agent Webb from disclosing any information acquired in the course of his official duties. 28 C.F.R. § 16.22 and 28 C.F.R. § 16.24(c) provide as follows:
28 C.F.R. § 16.22:
No employee or former employee of the Department of Justice shall, in response to a demand of a court or other authority, produce any material contained in the files of the Department or disclose any information relating to material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of his official duties or because of his official status without prior approval of the Department official or the Attorney General in accordance with § 16.24.
28 C.F.R. § 16.24(c):
If oral testimony is sought by the demand, an affidavit, or if that is not possible, a statement by the party seeking the testimony or his attorney, setting forth a summary of the testimony desired, must be furnished for submission by the United States Attorney to the appropriate Department official.
Since defendant failed to submit an affidavit or statement of the testimony desired of Agent Webb to the appropriate officials as required by 28 C.F.R. § 16.24(c), the witness properly declined to answer the questions regarding his official duties, and the trial judge's ruling excusing him was correct.
Moreover, as defendant admits in his brief, the questions that he posed to Agent Webb were directed at disclosure of the identity of the confidential informant who supplied Agent Webb with the information that defendant would be transporting explosives into New Orleans. Defendant alleges that disclosure of the informant's identity was vital to his defense because, he surmises, the informant may have planted, or may know who planted, the explosives in his vehicle without his knowledge.
*374 As the United States Supreme Court stated in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the informer privilege, the privilege of withholding the identity of an informant who supplies information to law enforcement officers concerning crime, is founded upon public policy and seeks to advance the public interest in effective law enforcement. We have consistently held, therefore, that a confidential informant's identity will be revealed only in exceptional circumstances. State v. Robinson, No. 58,525, 342 So.2d 183 (La.1977); State v. Russell, 334 So.2d 398 (La.1976); State v. Thorson, 302 So.2d 578 (La.1974). The burden is upon the defendant to demonstrate exceptional circumstances, and much discretion is vested in the trial judge on the question of whether the circumstances warrant disclosure. State v. Robinson, supra; State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), Cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Greenbaum, 257 La. 917, 244 So.2d 832 (1971).
In the present case, no evidence was presented that the confidential informant participated in the crime, or that the informant knew that other persons had placed the bomb in defendant's car without defendant's knowledge. Defendant's bare suggestion that the informant framed him is clearly insufficient to effect disclosure of the informant's identity. State v. Dotson, supra.
In his per curiam to this assignment of error, the trial judge states that he concluded that defendant's showing of exceptional circumstances was insufficient to warrant disclosure of the informant's identity. We think the trial judge was fully justified in reaching that conclusion. Assignment of Error No. 10 is without merit.

ASSIGNMENT OF ERROR NO. 11
Defendant, who testified in his own behalf at the trial, objected to the trial judge's instruction to the jury concerning the rules applicable to its consideration of his testimony. The trial judge overruled defendant's objection. In this assignment of error, defendant contends that the trial judge committed reversible error by referring in particular to defendant as a witness and instructing the jury that it had a right to consider, as one of the factors in weighing his testimony, "the interests he may have in the outcome of the case."
A trial judge should not, in his charge, by special reference to the accused or to any witness in particular, direct the attention of the jury to his interest in the result of the trial and thereby suggest that his testimony should be discounted by reason of his interest. State v. Elby, 145 La. 1019, 83 So. 227 (1919). Accord, State v. Harrison, 167 La. 855, 120 So. 477 (1929); State v. Rini, 151 La. 163, 91 So. 664 (1922); State v. King, 135 La. 117, 64 So. 1007 (1914). In the instant case, the trial judge initially instructed the jury regarding the factors that it may take into account in judging all witnesses' testimony, I. e., "the witnesses' conduct or bearing on the witness stand, the probability or improbability of their statements, the interest they may have in the outcome of the case." Then the trial judge, instructing the jury with regard to the rules that govern consideration of defendant's testimony, repeated the same factors that he had previously charged that the jury could take into account in evaluating the testimony of all witnesses. The trial judge concluded the charge by stating that defendant's testimony "should be judged with the testimony of other witnesses in this case."
In our opinion, the charge complained of was not prejudicial to defendant. The trial judge instructed the jury that defendant's testimony was to be governed by the same rules by which other witnesses' testimony is considered, and specifically stated that the jury should judge his testimony with that of other witnesses in the case. The trial judge did not pointedly direct the juror's attention to defendant's interest in the case and suggest that his testimony be discounted. Rather, the obvious, and correct, import and effect of his instruction was that the testimony of defendant *375 was not to be disregarded merely because he was on trial, but should be weighed and considered along with the testimony of other witnesses. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 12
Defendant took the stand in his own defense. On cross-examination, the state asked him whether he knew a man named Sam Bowers, Jr. and whether he had stopped to see him en route to New Orleans, whereupon defendant moved for a mistrial. The jury was asked to leave the courtroom, as defense counsel explained that Sam Bowers, Jr. was the reputed head of the Ku Klux Klan in Mississippi. Defendant argued in support of his motion that the prosecutor's mention of his acquaintance with Bowers prejudiced the jury, which included five black women, against him. The trial judge denied the motion for a mistrial, to which ruling defendant assigns error.
The trial judge did not err in denying defendant's motion for a mistrial. Like the trial judge, we do not think the name "Sam Bowers, Jr." had received such publicity that his name and role as reputed head of the Klan in Mississippi were known to the average juror in Orleans Parish. Nor did the context of the reference to Bowers suggest that he was a reputed Klan leader. We do not feel, therefore, that the mere reference to "Sam Bowers, Jr." during the cross-examination prejudiced defendant. Moreover, the trial judge ordered the state not to pursue its line of questioning with regard to Sam Bowers, Jr. any further, thus foreclosing any chance of prejudice that might result through other references to him.[7] This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 13
Defendant assigns as error the denial of his motion for a mistrial made when the state made the following remarks in closing argument:
. . . In a few minutes, we will see exactly what would have happened if Mr. Beckwith had not been intercepted on I10. We will see what would have happened somewhere in the City of New Orleans, perhaps in the designation marked out in the map on Galvez Street where that bomb would have exploded after it had been set.
Now, he was arriving in New Orleans right at midnight. He had been stopped, but had he not been stopped he would have been able, surely, to get down South Galvez Street, plant this thing and then leave.
At that point, defendant made an objection to the state's remarks, which the trial judge sustained. He then moved for a mistrial based on the state's comments in closing argument. Although denying the mistrial, the trial judge admonished the jury to disregard the state's remarks.
Defendant argues that the state's reference to his intended use of the bomb was a reference to another crime that he committed or allegedly committed as to which evidence is not admissible, I. e., possession of an explosive with intent to harm life, limb or property in violation of La.R.S. 40:1471.18. Under article 770(2) of the Code of Criminal Procedure, a mistrial shall be ordered, on motion of the defendant, when a remark or comment made within the hearing of the jury by the judge, district attorney, or court official refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
Since the penalty imposed by La.R.S. 40:1471.18 is imposed only upon persons who knowingly possess explosives without a license, knowledge is an essential element of the crime charged herein. Although knowledge, like intent, is a question of fact, it may be inferred from the circumstances of the transaction. La.R.S. 15:445.
*376 Counsel are permitted in argument to make fair and reasonable conclusions from the facts introduced in evidence. La.Code Crim.P. art. 774 (1966); State v. Lockett, 332 So.2d 443 (La.1976); State v. Weathers, 320 So.2d 895 (La.1975); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). Further, counsel may properly comment on and summarize the evidence in arguing facts. State v. Luckett, 327 So.2d 365 (La.1975).
In the portion of the state's closing argument forming the basis for defendant's motion for a mistrial, the state referred to facts introduced in evidence that had shown that defendant was apprehended in his car en route to New Orleans and that a bomb was discovered within his car. The closing argument also referred to a map, previously admitted in evidence (S4), which Sgt. Bernard Windstein, Jr. had earlier testified he found on the front seat of defendant's car. As the state pointed out in closing argument, the map was marked, with lines drawn to a designated location on Galvez Street in New Orleans. The state's argument in this regard was especially pertinent because in his testimony at trial defendant had denied knowledge of the existence of the box containing the bomb which was found in his car at the time of his arrest and also denied that the map (S-4) was in his car when arrested. Clearly, the state could draw a reasonable conclusion from the facts introduced in evidence that defendant, apprehended with a bomb in his car and a map on the front seat inferentially indicating the bomb's resting place, intended to use the bomb and thus transported the explosive knowingly.
Hence, the state's argument referred to relevant evidence to show knowledge, an essential element of the crime charged, and therefore did not constitute a reference to another crime as to which evidence was not admissible. La.Code Crim.P. art. 770(2); State v. Clift, 339 So.2d 755 (La.1976); State v. Strange, 334 So.2d 182 (La.1976); State v. Scott, 320 So.2d 538 (La.1975). Accordingly, the trial judge did not err in denying defendant's motion for a mistrial. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 14
Defendant alleges that the trial judge erred in denying his motion for a new trial.
Most of the grounds for the granting of a new trial that were alleged in defendant's motion are identical to contentions raised in his assignments of error which we have found to be without substance.
Additionally, defendant argued in his motion for a new trial that his "guilt was not proven by credible and admissible evidence beyond a reasonable doubt as required by law." The scope of this court's appellate jurisdiction in criminal matters extends only to questions of law. La.Const. art. 5, § 5(C) (1974). A contention such as presented here that the defendant's guilt has not been proved beyond a reasonable doubt is an attack on the sufficiency of the evidence, which is a question of fact. The jurisprudence is uniform in holding that we have no jurisdiction to pass on the sufficiency of the evidence in a criminal case. E. g., State v. Jack, 332 So.2d 464 (La.1976).
Only when it is alleged that there is no evidence at all of the crime charged or an essential element thereof is a question of law presented which this court can review. State v. Jack, supra; State v. Ackal, 290 So.2d 882 (La.1974). In his brief, defendant contends that there was no evidence that he had knowledge (an essential element of the crime) of the bomb's presence in his car. We think the facts that the explosives were found in a box, covered by a burlap bag, on the right front floorboard of his own car, that a map of New Orleans that had markings leading to a certain street in the city was found nearby on the front seat, and that his car bore an improper, substituted license plate, was certainly some circumstantial evidence that defendant knowingly transported the explosives in this state. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 15
Defendant alleges the trial judge committed reversible error in refusing to *377 permit him to call the prosecutor to the stand as an adverse witness for the purpose of showing that he deliberately propounded questions to defendant that served no other purpose than to appeal to the racial prejudice of the jury.
The questions propounded by the state formed the basis of Assignments of Error Nos. 12 and 13, which we have found to be without substance. In view of our disposition of those assignments of error, the trial judge did not err in denying defendant permission to call the prosecutor to the stand. This assignment of error has no merit.
In his brief, defendant contends that the trial judge erred in denying his motion to quash the bill of information on the ground that the statutes upon which the information was based are so vague that he could not discern which acts it condemns.
Article 1, section 13 of the Louisiana Constitution of 1974 provides that in a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. This constitutional guarantee requires that penal statutes describe unlawful conduct with sufficient particularity and clarity such that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. State v. Lindsey, 310 So.2d 89 (La.1975). Under the fourteenth amendment to the United States Constitution, words and phrases used in statutes must not be so vague and indefinite that any penalty prescribed for their violation would constitute a taking of liberty or property without due process of law. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); State v. Lindsey, supra.
La.R.S. 40:1471.8 provides, in pertinent part, that "[n]o person shall transport any explosive into this state or within the boundaries of this state over the highways, on navigable waters or by air, unless such person is possessed of a license or permit". La.R.S. 40:1471.18 prescribes the penalty for knowingly violating La.R.S. 40:1471.8. We are of the opinion that these provisions "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute". Papachristou v. City of Jacksonville, supra. Accordingly, the statutory provisions are not unconstitutionally vague.
We have reviewed the other attacks made on the validity of the statutory provisions in defendant's motion to quash and in brief to this court and find them to be totally lacking in substance.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., dissents.
DENNIS, J., concurs, but disagrees with the rationale of the opinion to the extent, if any, it depends on the federal regulations discussed in assignment of error no. 10.
NOTES
[1] Assignments of Error Nos. 6 and 16 have been neither briefed nor argued to this court. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] At the time Bartkus was decided, the proscription of double jeopardy included in the fifth amendment was not applicable to the states through the fourteenth amendment. Not until Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) did the Court hold that the fifth amendment guarantee against double jeopardy is enforceable against the states through the fourteenth amendment.
[3] See, e. g., United States v. Jones, 174 U.S.App.D.C. 34, 527 F.2d 817 (1975); Speed v. United States, 518 F.2d 75 (8th Cir. 1975); United States v. Kerrigan, 514 F.2d 35 (9th Cir.), cert. denied, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975); United States v. Jackson, 470 F.2d 684 (5th Cir.), cert. denied, 412 U.S. 951, 93 S.Ct. 3019, 37 L.Ed.2d 1004 (1972); United States ex rel. Hill v. United States, 452 F.2d 664 (5th Cir. 1971).
[4] The trial judge acknowledged at the hearing on the motion for change of venue that this article was written irresponsibly. The transcript of the hearing on defendant's motion for a new trial states that additional articles published in the States-Item, as well as transcriptions of news broadcasts concerning the case were admitted in evidence. However, neither the States-Item articles nor the transcriptions were filed into the record on appeal.
[5] In State v. Holmes, La., 342 So.2d 672, we granted writs to review the ruling of the trial judge ordering the state to produce the prior voting records of prospective jurors. This writ was granted on February 18, 1977; the matter will be set for hearing and decided in due course.
[6] Compare our denial of the state's application for certiorari in State v. Johnson & Pollard, 337 So.2d 516 (La.1976) wherein the trial judge ordered the state to produce arrest and conviction records of prospective jurors. We denied writs, stating that the evidentiary record was insufficient to rule upon the question. Following our denial of certiorari, the trial judge conducted an extensive evidentiary hearing relative to the compilation and dispensing of the records as well as defendant's independent access to such records. The trial judge again ordered the state to produce the records for defendant's inspection. We denied the state's application for certiorari a second time (with three Justices dissenting from the refusal to grant the writ) nothing that the trial judge had not abused his discretion. State v. Pollard & Johnson, 340 So.2d 989 (La.1977).
[7] The trial judge properly did not admonish the jury to disregard all references to "Sam Bowers, Jr.," since to have done so would only have called the jury's attention to his name and possible notoriety.