383 So.2d 996 (1979)
STATE of Louisiana
v.
John WILLIAMS.
No. 63541.
Supreme Court of Louisiana.
May 21, 1979.
Dissenting Opinion May 28, 1980.
*998 Alton T. Moran, Director, Gail H. Ray, Appellate Counsel, The Office of Public Defender, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.
John Williams was charged in the same information with two separate counts of armed robbery in violation of La. R.S. 14:64. After trial by jury, he was found guilty as charged on both counts and sentenced to serve seventy-five years at hard labor on each count. The court expressly directed that the sentences be served concurrently. On appeal, defendant relies on eleven assignments of error for reversal of his convictions and sentences.[1]

ASSIGNMENTS OF ERROR NOS. 2, 3 AND 6
Defendant contends the trial judge erred in denying his motion to examine prospective jurors individually and outside the presence of each other on voir dire and in overruling his objection to the examination of twenty-four jurors at the same time. He argues that his right to full voir dire examination as guaranteed by La.Const. art. 1, § 17 was circumvented by the procedure employed by the trial judge in the selection of the jury (Assignments of Error Nos. 2 and 3). Defendant further contends that, in selecting the panel, the names of prospective jurors were not drawn from the petit jury venire indiscriminately and by lot in open court in violation of La.Code Crim.P. art. 784 (Assignment of Error No. 6).
At the commencement of the selection of the jury on April 12, 1978, twenty-four prospective jurors (members of the jury venire panel No. 2 for April 12, 1978) were brought into the courtroom and seated in alphabetical order in the first two rows of the audience section of the courtroom. The trial *999 judge informed the state and defendant that all twenty-four members of the panel would be examined at one time. The prospective jurors were then sworn and examined by the court, the state and the defendant. At the conclusion of the examination, eighteen of the prospective jurors were peremptorily challenged by the state and defendant. None of the jurors were challenged for cause by the state or defendant. The six remaining prospective jurors were duly sworn to serve as jurors in the case and were retired to the jury room to await the selection of the balance of the jury. After a brief recess, fifteen more prospective jurors (members of the jury venire panel No. 4 for April 12, 1978) were called and sworn. After examination, the remaining members of the jury were selected and sworn.
In selecting a petit jury panel, details such as whether the jurors should be called singly or by groups are left to the court's discretion. The trial court can and should regulate such matters. La.Code Crim.P. art. 784, Official Revision Comment (c). The calling of prospective jurors in groups, rather than singly, and their examination in the presence of each other does not, in the absence of special circumstances, deny a defendant a fair trial. See State v. Hegwood, 345 So.2d 1179 (La.1977).
We find no such "special circumstances" here. Defendant extensively examined the prospective jurors both individually and collectively. In addition, defendant points to nothing particular about this case which might cause answers given by some prospective jurors (or the questions asked them) to prejudice the views of the other prospective jurors in the group. Hence, we do not find that the trial judge abused his discretion in calling the prospective jurors in groups, rather than individually, and in allowing their examination in the presence of each other. Nor do we consider that the trial judge abused his discretion in permitting the examination of twenty-four jurors at the same time.
Next, we consider defendant's contention that the trial judge failed to select a jury panel indiscriminately and by lot in open court as directed by La.Code Crim.P. art. 784.
In State v. Hoffman, 345 So.2d 1 (La. 1977) (on rehearing), this court held that the requirements of La.Code Crim.P. art. 784 were applicable to the criminal district courts in Orleans Parish and La.Code Crim.P. art. 409.1 (authorizing the creation and operation of a central jury pool for the parish's criminal courts) such that there was error in calling prospective jurors in the order that their names appeared on the jury panel sheet compiled by the jury commission rather than "indiscriminately and by lot in open court" as mandated by article 784.
However, after our decision in Hoffman, La.Code Crim.P. art. 784, was amended by Acts 1977, No. 556, to provide:
In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.

In those judicial district courts, including the Criminal District Court for the parish of Orleans, wherein use of a jury pool has been authorized by law, the petit jury panel shall be selected by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected. (amendment emphasized)
It is now apparent that those judicial district courts, wherein use of a jury pool has been authorized by law, are exempt from the requirement of the first paragraph of article 784 (i. e., that, in selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court) and are required, instead, to select the petit jury panel by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected. See State v. Hillin, 367 So.2d 282 (La.1978) (per curiam) (unpublished appendix to per curiam). As the effective date of this amendment to article *1000 784 (July 15, 1977) is prior to the date of the offenses charged herein (January 9, 1978), it is clear that the amendment applies to the procedures employed by the trial court in the instant case.
Use of a central jury pool has been authorized by law for the Nineteenth Judicial District Court (La.Code Crim.P. art. 409.4) and, pursuant to this statutory authorization, that court has adopted Rule VII, constituting and administering its central jury pool. This rule provides for the random, indiscriminate choice of petit jury panels and, thus, on its face complies with the requirement of article 784 (as amended).[2] In overruling defendant's objection, the trial judge indicated that the panel had been selected at random under the jury management plan authorized by law for the court. Moreover, defendant does not allege any violation of the procedures established in Rule VII. Accordingly, defendant's contention that the trial court failed to comply with the requirements of article 784 is without merit.
Assignments of Error Nos. 2, 3 and 6 are without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
Defendant contends the trial judge erred in permitting the state, over defense objection, to amend the bill of information on the day of trial (Assignment of Error No. 4). Defendant further contends the trial judge erred in denying his motion for a continuance grounded on the claim that he had been prejudiced in his defense upon the merits as a result of the amendment (Assignment of Error No. 5).
The district attorney filed the bill of information in this case on January 27, 1978. In pertinent part, the information recited that:
on or about the ninth (9th) day of January, 1978, [defendant] committed the offense(s) of ARMED ROBBERY (FELONY), violating Louisiana Revised Statutes 14:64, in that [he] robbed Adeline Vurlemont, while armed with a dangerous weapon, to-wit: a knife,
Count IOn or about the ninth (9th) day of January, 1978, [he] violated La.R.S. 14:64 in that [he] robbed Ida Collins, while armed with a dangerous weapon, to-wit: a knife....
On the day of trial, April 12, 1978, after the prospective jurors had been sworn, the state moved to amend the information so that, in pertinent part, it would read as follows:
on or about the ninth (9th) day of January, 1978, [defendant] committed the offense(s) of ARMED ROBBERY (FELONY)
Count IOn or about the 9th day of January, 1978, [he] violated Louisiana Revised Statutes 14:64, in that [he] robbed Adeline Vurlemont, while armed with a dangerous weapon, to-wit: a knife,
Count IIOn or about the ninth (9th) day of January, 1978, [he] violated La. R.S. 14:64 in that [he] robbed Ida Collins, while armed with a dangerous weapon, to-wit: a knife . . . .
Defendant objected to the amendment, arguing that it added a second charge of armed robbery to the information. The trial judge overruled the objection (Assignment of Error No. 4). Immediately thereafter, defendant moved for a continuance, alleging that he had been prejudiced in his defense upon the merits as a result of the amendment. The trial judge denied the *1001 motion for a continuance (Assignment of Error No. 5).
Article 487 of the Code of Criminal Procedure states that the court may cause an indictment to be amended at any time with respect to a defect of formi. e., "any defect or imperfection in, or omission of, any manner of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein." Cf. State v. Drew, 360 So.2d 500 (La.1978). On the other hand, an amendment to an indictment which relates to a defect of substance is properly allowed only before trial begins. La.Code Crim.P. art. 487; State v. Lovett, 359 So.2d 163 (La.1978); State v. Bluain, 315 So.2d 749 (La.1975). A jury trial commences when the first prospective juror is called for examination. La.Code Crim.P. art. 761; see also id. art. 786.
It is clear that the information filed by the state charged defendant with two distinct offenses: the armed robbery of Adeline Vurlemont and the armed robbery of Ida Collins. However, the information inadvertently placed the figure "Count I" before the second charge of armed robbery (i. e., of Ida Collins) and did not signify any "count" before the first charge of armed robbery (i. e., of Adeline Vurlemont). As such, the amendment offered by the state related merely to a defect of formi. e., correcting a "miswriting" and an "omission" in the information. Accordingly, assuming, without deciding, that the jury trial had commenced when the state moved to amend the information, this amendment (relating only to a defect of form) was properly allowed by the trial judge.
Finding that the trial judge properly allowed the state to amend the information, we must next consider whether the judge erred in denying defendant's motion for a continuance.
Under article 489 of the Code of Criminal Procedure, the court shall grant a continuance on motion of the defendant if the defendant has been prejudiced in his defense on the merits by the amendment of the indictment. It is incumbent upon the defendant to show in what respect his defense has been prejudiced by amendment of the indictment. State v. de la Beckwith, 344 So.2d 360 (La.1977).
In his motion for a continuance, defendant argued that the effect of the amendment was to add a second count of armed robbery to the information and he was prepared to defend against only one count of armed robbery. It is, however, apparent that defendant was fully aware that he was being charged with two separate counts of armed robbery. On February 10, 1978, defendant was formally arraigned on two counts of armed robbery and entered pleas of not guilty on both counts. In his motion for a preliminary examination, filed on February 13, 1978, defendant acknowledged that he had been charged with two counts of armed robbery. Moreover, on the day of trial (prior to objecting to the state's amendment) defendant withdrew his previous pleas of not guilty and entered pleas of "not guilty and not guilty by reason of insanity" as to each of the two counts of armed robbery.
The purpose of the continuance when an amendment to the indictment is made is to protect the defendant from surprise and prejudice which may result from such an amendment. La.Code Crim.P. art. 489, Official Revision Comment (a). Under the circumstances here presented, we do not find that defendant was surprised, nor his defense prejudiced, by the amendment. Accordingly, the trial judge did not err in denying the motion for a continuance.
Assignments of Error Nos. 4 and 5 are without merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
Defendant contends the trial judge erred in denying his motion for a mistrial on the ground that testimony by a state's witness and a remark made by the district attorney referred to inadmissible evidence of another *1002 crime and in failing to admonish the jury to disregard such references.
At trial, the state established that two armed robberies had occurred approximately one mile apart in East Baton Rouge Parish on January 9, 1978, between approximately 11:00 a. m. and 12:30 p. m. A witness to the first armed robbery, Mrs. Vic Angeli, and the victim of the second armed robbery, Ida Mae Collins, made in-court identifications of defendant as the individual who committed the robberies.
Thereafter, Bob Tycer, the arresting officer, was called as a state witness. On direct examination, he stated that he arrested defendant in Franklinton (Washington Parish), Louisiana on January 9, 1978. Although aware of the two armed robberies, Tycer indicated that, when he left for Franklinton at 1:00 p. m. on January 9, 1978, he had no knowledge of defendant's involvement in the robberies. In response to questions from the district attorney, Tycer stated that he was "looking for John Williams prior to any armed robberies" and that, when defendant was arrested, he and a deputy from Washington Parish "booked him as a fugitive from Baton Rouge." During cross-examination, the following colloquy occurred:

Defense Counsel: You did say, Captain Tycer, that at the time you arrested Mr. Williams you were not arresting him for any armed robberies. Is that correct?

Tycer: That was not the reason that I had arrested him.

Defense Counsel: I have no further questions of this witness.

District Attorney: I think the jury ought to know why he was arrested. I withdraw that.
The trial judge immediately instructed both defense counsel and the district attorney not to make any further comments. He removed the jury from the courtroom and admonished the jurors not to consider as evidence in the case any comments made by the district attorney or defense counsel.
After the jury was removed, defendant moved for a mistrial, arguing that the district attorney's reference to defendant's arrest related to inadmissible evidence of another crime. The trial judge denied the motion. Defendant thereafter requested the trial judge to admonish the jurors to disregard the district attorney's comment and Tycer's testimony relating to defendant's arrest. The trial judge, having already admonished the jurors, denied the request.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. La.Code Crim.P. art. 770(2). Additionally, upon request of defendant, the court shall promptly admonish the jury to disregard a remark or comment made during trial, or in argument, within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury when such remark or comment is made by a witness, regardless of whether the remark or comment is within the scope of article 770. La.Code Crim.P. art. 771(2). In such cases, on motion of defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. Id. art. 771. However, it is well settled that a defendant's failure to timely raise a contemporaneous objection (La.Code Crim.P. art. 841), move for a mistrial, or request an admonition is a waiver of any such error. See State v. Bernard, 358 So.2d 1268 (La.1978); State v. Hamilton, 356 So.2d 1360 (La.1978); State v. Mouton, 327 So.2d 413 (La.1976).
As noted by the trial judge in denying defendant's motion for a mistrial and request for an admonition, defendant had, prior to the commission of the armed robberies, escaped from parish jail and apparently his arrest by Tycer was related to this escape, rather than the robberies. However, assuming, without deciding, that Tycer's testimony and the district attorney's *1003 remark referred to inadmissible evidence of another crime, we find any such error was waived by defendant's failure to timely move for a mistrial, request an admonition, or enter a contemporaneous objection.
During Tycer's direct examination by the state, his testimony clearly exposed the jury to the fact that defendant was arrested in Franklinton for reasons entirely unrelated to the robberies. Defendant failed to make any effort to prevent such testimony. In fact, it was defense counsel who, during his cross-examination of Tycer, reinforced in the jurors' minds the fact that Tycer arrested defendant for a crime other than the armed robberies. Moreover, during voir dire, defense counsel specifically asked several prospective jurors if they had been exposed to any publicity relating to "someone walking out of Parish Prison and then later being arrested for two armed robberies."
Hence, we do not find that the trial judge erred in denying defendant's motion for a mistrial and request for an admonition.
Assignments of Error Nos. 8 and 9 are without merit.

ASSIGNMENT OF ERROR NO. 10
Defendant contends the trial judge erred in allowing his confession in evidence. He argues that the confession was not freely and voluntarily made by him.
During trial, outside the presence of the jury, a hearing was conducted to permit the state to lay a foundation for introduction of defendant's confession in evidence. Sgt. David L. Cambre, a member of the Baton Rouge police department, testified that defendant was arrested and transported to the parish jail in the early morning hours of January 10, 1978. Shortly thereafter, he and Lt. Robert Gill brought defendant to the detective office to question him. Defendant was advised of his Miranda rights; however, he refused to sign a waiver of rights form or answer any questions. Defendant was returned to jail. Cambre testified that defendant was next questioned on January 12, 1978. Again, he and Lt. Gill brought defendant from the parish jail to an interview room where defendant was advised of his Miranda rights. Defendant, at this time, signed a waiver of rights form, acknowledging his understanding thereof, and indicated that he wished to cooperate and discuss the robberies with the officers. Defendant then gave the officers a confession as to his involvement in the robberies which was written word for word by Sgt. Cambre as defendant dictated to him. At the conclusion, Sgt. Cambre reviewed the statement with defendant to assure that he understood it and that it accurately reflected his statements. Defendant advised Sgt. Cambre that he understood it and, in fact, initialed a correction on the statement. Thereafter, defendant signed the statement in the presence of Officers Cambre and Gill. Officer Cambre testified that he and Lt. Gill were present throughout both interviews with defendant. He emphatically maintained that neither he nor Lt. Gill ever threatened, coerced or physically abused defendant or promised him anything to induce his confession.
Defendant's testimony was contrary to the testimony of the police officer. He stated that, when Officers Cambre and Gill brought him back to the parish jail after the first interview on January 10, both officers slapped and kicked him. During the second interview on January 12, defendant maintained that Lt. Gill informed him that he would not receive more than a twenty-five year sentence on any charge and promised him that he would not even go to trial if he signed a prepared confession; defendant also stated that Sgt. Cambre implied that he had "pull" with the district attorney's office in an effort to induce him to sign the confession. Defendant testified that the signatures appearing on the waiver of rights form and confession were not his and maintained that he had not signed anything during either interview with the officers.
At the conclusion of the hearing, the trial judge, finding that the confession was freely and voluntarily made by defendant after having been advised of his Miranda rights, ruled that the confession was admissible in evidence.
*1004 Before a confession may be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, inducements or promises. La. R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Matthews, 354 So.2d 552 (La.1978); State v. Lewis, 353 So.2d 703 (La.1977); State v. Fowlkes, 352 So.2d 208 (La.1977); State v. Hutto, 349 So.2d 318 (La.1977); State v. Adams, 347 So.2d 195 (La.1977).
In the instant case, defendant's allegations that he was promised leniency on pending charges if he confessed to the crimes and that he was physically abused are uncorroborated and were specifically denied by Sgt. Cambre who was present continuously during both interviews with defendant. As to defendant's claim that the signatures appearing on the waiver of rights form and confession were not his, the trial judge, after comparison of those signatures with in-court signatures made by defendant, concluded that defendant had, in fact, signed the waiver of rights form and confession.
After reviewing the record, we are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the confession was freely and voluntarily made after defendant had been advised of his Miranda rights.[3] Accordingly, the trial judge did not err in admitting the confession in evidence.
Assignment of Error No. 10 is without merit.

DECREE
For the reasons assigned, the convictions and sentences are affirmed.
CALOGERO, J., dissents.
DIXON and DENNIS, JJ., dissent and assign reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
The objection here is that the petit jury was not selected "indiscriminately and by lot in open court . . ." as provided for by C.Cr.P. 784.
The 1977 amendment to C.Cr.P. 784 provided that, where a jury pool is used, the indiscriminate and random selection of the petit jury may be made in a manner to be determined by rules of court.
Rule 7 of the Nineteenth Judicial District Court covers selection procedure from the central jury pool. Section 2.2 of Rule 7 provides: "The petit jury shall be selected in accordance with law from the jury pool panels."
Rule 7 provides in Section 1.2 that the central jury pool shall consist of persons "randomly selected from the general venire" and divided into jury pool panels of twelve persons, which shall be called "primary jury pool panels." In lieu of "primary jury pool panels," in certain cases, "twelve-person jury pool panels are to be selected at random" from the central jury pool (Section 2.1(B)).
It is apparent that the "primary jury pool panels" and the "twelve-person jury pool panels" are not the same as the "panel" *1005 found in C.Cr.P. 784. That panel is drawn from the "petit jury venire," and must be drawn indiscriminately and by lot in open court. It is apparent that the "primary jury pool panels" (where the central jury pool is used) take the place of the "petit jury venire" under the codal scheme (in districts not using the central jury pool).
Therefore, the rules of the Nineteenth Judicial District Court have not done away with drawing petit jury panels "indiscriminately and by lot in open court." To the contrary, the rules of court provide that the petit jury shall be selected in accordance with law from the jury pool panelsthat is, indiscriminately and by lot in open court.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by Chief Justice Dixon.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 1, 7 and 11. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] The Nineteenth Judicial District Court central jury pool is composed of not less than forty-eight persons randomly selected from the general venire and initially divided into "primary jury pool panels" of twelve persons. Rule 7, §§ 1.2, 1.3. Where a trial jury is to be composed of twelve jurors, the trial court shall be assigned a minimum of two primary jury pool panels. Id., § 2.1(A). If sufficient primary jury pool panels do not remain intact upon initiation of a trial, the court may be assigned twelve person jury pool panels selected at random from persons within the central jury pool in lieu of primary jury pool panels. Id., § 2.1(B). If the need arises, the court may request additional persons from the central jury pool. These additional persons may be provided in primary jury pool panels or in jury pool panels of not less than five selected at random from the central jury pool. Id., § 2.1(C).
[3] In brief, defendant contends the trial judge erred in basing his determination that the confession was free and voluntary on evidence that the trial judge had considered in a previous trial involving defendant. However, as we find that the evidence introduced at the hearing in this case fully supports the trial judge's conclusion as to the voluntariness of defendant's confession for the purpose of admissibility, we need not consider this contention.