413 So.2d 1312 (1981)
STATE of Louisiana
v.
Clifton G. ST. AMANT.
No. 81-KA-0758.
Supreme Court of Louisiana.
December 14, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick and Ralph Roy, Asst. Dist. Attys., for plaintiff-appellee.
Alex W. Wall, Sr., of Avant, Wall, Thomas, Riche & Falcon, Baton Rouge, for defendant-appellant.
WALLACE A. EDWARDS, Justice Ad Hoc.[*]
The defendant, Clifton G. St. Amant, was charged by bill of information with attempted first degree murder. LSA-R.S. 14:27; 14:30. A unanimous jury of twelve men and women convicted defendant of that offense. The trial judge sentenced defendant to twenty-five years at hard labor. *1313 Defendant has appealed this conviction and sentence setting forth six assignments of error.

FACTS
On July 30, 1978, Joseph Cosby and several members of his family were gathered at the home of Johnny Cosby. Some time during that afternoon, the defendant, Clifton G. St. Amant, and another unidentified man stopped their car about 15 or 20 feet from the porch where the Cosby family was gathered. The defendant, who was sitting on the passenger's side of the automobile, called out for someone to "come see." John Thomas approached the car and defendant requested that someone give him gas money. Thomas told the defendant that nobody knew him and that he should leave.
The car then left, only to return about three minutes later. This time, St. Amant emerged from the car with a 10-inch hunting knife. Joseph Cosby and the others told him to leave because they were not going to give him any money. St. Amant and his companion left, but St. Amant returned alone approximately twenty minutes later. With his hand held behind his back as if to conceal something, the defendant approached the Cosby family porch. When St. Amant reached the group, Cosby hit him on the head with a beer bottle. The defendant once more left the Cosby home.
Approximately fifteen minutes later, St. Amant drove his automobile into the Cosby yard. Defendant again approached the group with his hand hidden behind his back. This time, Joseph Cosby hit defendant in the arm with a pipe and John Thomas punched him in the face. For the fourth time, the defendant left, this time on foot.
Later that night, Joseph Cosby went to his sister's house to wait for his sister-in-law, Juanita Cosby, who would be stopping there on her way home from work to pick up her children. Juanita Cosby agreed to give Joseph a ride home. Juanita was driving an automobile which belonged to her brother, Jesse Thomas, who was a passenger in the front seat. Joseph Cosby got into the back seat with Juanita's two young children.
When they arrived at her home, Juanita got out of the car to unlock the front door. At this time two men approached the car. One of the men, wearing a sling on his arm, stepped up to the automobile and fired numerous shots into the back seat of the automobile at Joseph Cosby. Cosby received a number of wounds in his arm, leg, side and back. At trial, Cosby identified the man who had done the shooting as being the same man who had harassed the family at the gathering all that day.
Defendant, Clifton G. St. Amant, was arrested and charged by bill of information with attempted first degree murder. He was convicted of that offense by a unanimous twelve person jury.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant assigns error to the trial judge's decision to have three jury panels, consisting of a total of thirty-six people, interrogated at the same time.
During the voir dire the venire of thirty-six persons, comprising three jury panels, was seated in the first three rows of the audience area of the courtroom. The attorneys questioned the potential jurors from the counsel tables in front of the courtroom. A hand microphone was passed among the potential jurors for each to use when his name was called. Judge Moreau instructed the venire members that they should "not scratch on the microphone or bang it against anything." The microphone was used for recording purposes and not for amplification.
Defense counsel objected to this procedure and requested that potential jurors be questioned in groups no larger than twelve. The trial court overruled this objection and proceeded with the voir dire examination.
Counsel for the defendant maintains that the purpose of jury interrogation is to afford the state and the defense an opportunity to make an intelligent selection of jurors. He asserts that the selection process is hampered when the interrogator gets no *1314 real chance to experience a face to face contact with the party interrogated. Counsel contends that he and his client were denied the right to fully participate in the voir dire. He maintains that the large group made it impossible to observe the facial expressions of individual venire members or to get any type of reaction from them other than an answer to a particular question.
The decision to call jurors in groups rather than individually is a matter within the trial court's discretion. State v. Hegwood, 345 So.2d 1179 (La.1977). In Hegwood, this court found that the examination of prospective jurors in groups does not, in the absence of special circumstances, deny a defendant a fair trial.
In State v. Williams, 383 So.2d 996 (La. 1979), this court reviewed a voir dire examination during which twenty-four jurors were interviewed at once. We found that the trial judge did not abuse his discretion in permitting the examination of twenty-four jurors at the same time. Furthermore, the court noted that no "special circumstances" existed in Williams since defendant extensively examined the prospective jurors, both individually and collectively.
LSA-Const. art. I, § 16 gives an accused the right to full voir dire examination of prospective jurors. In State v. Dixon, 365 So.2d 1310 (La.1978), this court observed that the right to a full voir dire examination "includes addressing, hearing and observing the veniremen directly and as individuals." In Dixon the defendant's conviction was reversed because the trial court would not allow counsel to ask prospective jurors any questions previously addressed to other veniremen. Counsel was restricted to asking if the newly called veniremen had heard the questions asked of the earlier ones and if their answers would be the same or substantially the same as the other jurors.
The record does reflect that in this case some problems were caused by the size of the jury panel which was questioned. However, counsel has failed to make a showing that the trial judge abused his discretion. No "special circumstances" which may have denied defendant a fair trial exist here. As in State v. Williams, supra, defendant's counsel was allowed to extensively examine the prospective jurors, both individually and collectively.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant assigns as error the alleged interference by the trial judge with defense counsel's questions on voir dire.
During voir dire, after request by defense counsel, the trial court gave some instructions to the jury on the subject of criminal intent. Afterwards, defense counsel gave his explanation and definition of intent to the prospective jurors. Counsel then propounded the following question to the jurors:
"Will each of you, if taken as a juror, require the State to prove specific intent as I've outlined? Does anyone have any problems with that?"
The trial judge interrupted with this statement:
"Mr. Wall, the question is will they require the State to prove it as I've outlined it and I'll ask them as a group. You've heard me read the definition of specific criminal intent, are there any of you who will not accept the definition and instruction as given by the court?"
Counsel for defense asserts that the trial judge limited his voir dire questioning of the jury. He relies upon State v. Hayes, 364 So.2d 923 (La.1978); and State v. Hawkins, 376 So.2d 943 (La.1979).
In State v. Hayes, supra, defense counsel had explained defendant's right not to testify. Counsel then asked prospective jurors whether any of them felt that they still wanted to hear defendant's side of the story. The State objected to that question and the court sustained the objection. This court held that the trial judge's decision was a violation of his discretion to limit voir dire. In reversing defendant's conviction, this court noted that defense counsel should *1315 be given wide latitude in its examination of prospective jurors.
In State v. Hawkins, supra, the Judge instructed the jury on the law concerning insanity. When counsel attempted to question a juror on her understanding of the law, the trial judge interrupted him and refused to allow further inquiry on that issue. On rehearing, this court reversed defendant's conviction finding that "the trial judge erred in disallowing the inquiry and in unduly restricting counsel's voir dire examination of prospective jurors."
The present situation is easily distinguishable from the authority cited by the appellant. In this case, the court was not hampering or restricting counsel's explanation or questions. The trial judge was merely correcting an improper statement concerning from whom the jury must accept the law. The record reflects that the trial judge did not restrict counsel's explanation of criminal intent. The only question that the trial judge refused to allow was whether the jury would accept the law as given by defense counsel. Had defense counsel been allowed to proceed, the jury could have very well been misled. LSA-C. Cr.P. art. 802 plainly states that the judge must instruct the jury that they have the duty to accept and to apply the law as given by the court.[1]
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant assigns as error the trial judge's refusal to instruct the jury, prior to commencement of the trial, that attempted first degree murder requires proof of a specific intent to kill rather than mere proof of an intent to inflict great bodily harm.
Prior to the commencement of the trial, the judge read to the jury the statutes involved in the case: LSA-R.S. 14:30, First Degree Murder; LSA-R.S. 14:27, Attempt. He prefaced this reading with the following introduction:
"Ladies and gentlemen, these comments are intended to serve as a brief introduction to the trial of this case. They are not a substitute for the more detailed instructions which I will give you at the close of the case and before you retire to consider your verdict."
At the close of the judge's reading, defense counsel requested that the judge inform the jury that attempted first degree murder requires proof of a specific intent to kill rather than mere proof of an intent to inflict great bodily harm. The judge refused to do so, stating that he would give the appropriate instruction in his closing instructions to the jury.
The law is well settled that a specific intent to kill is an essential element of the crime of attempted murder. State v. Roberts, 213 La. 559, 35 So.2d 216 (1948); State v. Butler, 322 So.2d 189 (La., 1975). During the court's instructions to the jury at the end of the trial, the instruction requested by defense counsel was given. However, defense counsel contends that this charge did not cure the alleged error. Counsel submits that it was important for the jury to know the applicable law at the outset of the trial.
There is no requirement in the jurisprudence or the statutory law that the trial judge give any requested instructions to the jury prior to trial. LSA-C.Cr.P. art. 801 requires the court to charge the jury "after the presentation of all evidence and arguments." When the trial judge takes it upon himself to read applicable statutes to the jury prior to trial, he should correctly inform the jury of the appropriate parts of the statutes. This step is especially appropriate in situations such as the present case where only part of the statute is applicable.
*1316 The trial judge's actions in this case did not prejudice the defendant, however. The judge did not instruct the jury that all of LSA-R.S. 14:30 applied, but the jury might have assumed that all of it applied since the judge read all of the statute. This assumption is doubtful since the jury remained in the courtroom while counsel discussed the statute with the judge. Furthermore, any incorrect assumptions by the jurors as to the law were corrected by the trial judge in his closing charge. The judge instructed the jury that:
There's an additional element which you would have to find in order to find that the defendant was guilty of attempted first degree murder and in order for you to understand that I'll read the definition of first degree murder which you are to apply along with the definition of attempt that I read to you. First degree murder is the killing of a human being when the offender has a specific intent to kill. And for your purposes attempted first degree murder is an attempt to commit first degree murder; that is, an attempt to kill a human being when the offender has a specific intent to kill."
Based upon these facts, we do not find any prejudice to the defendant arising from the trial judge's refusal to give the requested instruction prior to commencement of the case.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment defendant contends that the trial judge erred in not properly admonishing the jury after an allegedly prejudicial statement was made by a witness. During the trial, the State called Booker T. Roseborough as a witness. When asked by the Assistant District Attorney if he had ever seen the defendant after the shooting, Roseborough replied:
"No, sir. Until after one day I was onuhScenic Highway touha placeuhthat fix on cars and stuff and he walked up and told me that he started to kill me."
Defense counsel promptly objected to the statement and the jury was removed from the courtroom. Counsel moved that the jury be instructed to disregard the answer to the question. The court sustained defense counsel's objection to the statement on the grounds that it was irrelevant and immaterial. However, when the jury returned to the courtroom, the judge gave the following instruction:
"The jury is instructed that if there is any evidence which comes before them which they find irrelevant and immaterial to this proceeding they are to disregard it in connection with this proceeding."
Counsel objected to this instruction and asked that the jury be advised to disregard the statement made by Mr. Roseborough. The trial court refused that request.
LSA-C.Cr.P. art. 771 provides, in pertinent part, as follows:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770."
The answer given by the witness was irrelevant and immaterial. Although the trial judge sustained the objection, he failed to correctly admonish the jury as required by Article 771. Instructing a jury to disregard what "they find irrelevant and immaterial" is not a proper instruction. The average juror has no knowledge of the technical legal meanings of "irrelevant" or "immaterial".
*1317 In this case the evidence against the defendant was substantial. It is doubtful that the statement contributed to defendant's conviction, especially in light of the ambiguity in Roseborough's answer. LSA-C.Cr.P. art. 921 provides as follows:
"A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."
In this instance, because of the nature of the statement by Roseborough, defendant's "substantial rights" were not affected, and he was not prejudiced.

ASSIGNMENT OF ERROR NUMBER FIVE
This assignment of error was not briefed and has been expressly waived by counsel for the defendant.

ASSIGNMENT OF ERROR NUMBER SIX
By this assignment of error defense counsel contends that the trial judge erred when he denied defendant's motion for a mistrial. This motion was based on the alleged prejudicial effect of evidence envelopes which were handed to the Assistant District Attorney by a police officer during defense counsel's closing argument. During the course of his closing argument, counsel for the defendant made the following statement:
"Mr. Roy was talking about the evidence or lack of evidence, reasonable doubt arises out of the evidence or lack evidence (sic) in the case and that's correct. So your reasonable doubt can be contributed to evidence or a failure to bring in evidence. It's not enough to say that the state lost the evidence. That's the State's case. It's evidence that may have helped or hurt but it's evidence that should have been before this jury. The court will also instruct that the presumption that witnesses and evidence presented to this particular jury is evidence and testimony that would not have aided"
At that point, Detective Bihm, a state witness during the trial, approached the counsel table and handed the prosecutor three large evidence envelopes. The record indicates that defense counsel reacted as follows:
"Judge, I don't know what that exchange just was but I'm going to ask for a mistrial. I don't think that was proper at all. The detective walked up and gave Mr. Roy something and Mr. Roy smiles to the jury. I"
At that point, the trial judge interrupted and ordered that the jury be removed from the courtroom.
Officer Bihm was then sworn and questioned by defense counsel. He admitted handing three evidence envelopes to Ralph Roy, the Assistant District Attorney. When asked to do so, Officer Bihm estimated that Mr. Roy was sitting approximately five feet from the closest juror when he handed him the envelopes. The court then questioned Officer Bihm on the contents of the envelopes. Bihm testified that he had not examined the contents but believed it to be evidence in the defendant's case. He stated that he was instructed to locate the evidence.[2]
Although the judge found the action "discourteous," he denied the motion for mistrial stating that "I don't think its prejudicial in this case...." Subsequently, the court asked if counsel wanted an admonishment to the jury. The record does not reflect an affirmative or negative response from counsel. The court then stated: "You've made no such request, I assume you don't want me to do that. Okay." The jury was then returned to the courtroom and defense counsel concluded his closing argument.
Counsel for defendant argues that these actions were highly prejudicial to his client and that a mistrial should have been granted. *1318 The defense relies on the following portion of LSA-C.Cr.P. art. 775:
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial...."
Defense counsel asserts that this incident totally distracted the jury from the closing comments of the defense. He also maintains that it presented to the jury the very thing which the defense had argued was lacking, the material evidence procured by the state during its investigation.
The State contends that the occurrence was "but a mere coincidence." It asserts that there was no preconceived plan to interrupt the closing statement of defense counsel. The State maintains that "anyone who has ever been in a courtroom during trial knows that there are all sorts of people coming and going to bring documents and papers to be signed, etc...." The State contends that the defendant was not prejudiced by delivery of envelopes to the prosecutor.
Mistrial is a drastic remedy and, except in instances in which the mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Russell, 352 So.2d 1289 (La.1977); State v. Overton, 337 So.2d 1058 (La.1976); State v. Redfud, 325 So.2d 595 (La.1976). This determination lies within the sound discretion of the trial judge and will not be disturbed, absent an abuse of that discretion. State v. Alexander, 351 So.2d 505 (La.1977); State v. Haynes, 339 So.2d 328 (La.1976).
In the present case, the trial court concluded that the incident did not deprive defendant of a reasonable expectation of a fair trial. Defendant has failed to demonstrate that the trial court abused its discretion in denying a mistrial. The envelopes were admittedly evidence envelopes. However, since the jury was not polled, there is no way of knowing whether the jury saw the envelopes. Even if they saw them, the record does not establish that they knew they were evidence envelopes. The actions of the State in this incident were highly discourteous and unprofessional. However, the defendant has failed to demonstrate that they were sufficiently prejudicial to deprive him of a fair trial. No showing has been made that the trial court's denial of a mistrial was in error.
This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., dissents because of the voir dire of the jury.
BLANCHE, J., dissents and hands down reasons.
BLANCHE, Justice (dissenting).
This writer agrees with the principle that a trial judge's decision to call prospective jurors in groups is a matter within his sound discretion, and has approved as being within that discretion a trial judge in calling 24 prospective jurors at one time, State v. Williams, 383 So.2d 996 (La.1979). However, this writer will not make that mistake again. Now, we have a trial judge calling up 36 prospective jurors at one time for examination by counsel.
Based upon experience and taking the liberty of further reconsideration, this writer is of the opinion that a group larger than 12 called for questioning is an abuse of that discretion. Counsel, for the first time, is introduced to the panel, and remembering the names of 12 different panelists would be difficult enough; remembering 36 would be impossible. Effective voir dire encompasses the right to ask such questions as will enable counsel to protect the constitutional rights of his client by showing grounds for challenges for cause and, also, by eliciting facts that will empower him to intelligently exercise his right of peremptory challenge. See State v. Boen, 362 So.2d 519 (La.1978); State v. Jackson, 358 So.2d 1263 (La.1978); State v. Hills, 241 La. 345, 129 So.2d 12 (1961), all cited in State v. Dixon, 365 So.2d 1310 (La.1978). Additionally noted in Dixon is the following:
"Whatever else the right [to full voir dire] entails, it certainly includes addressing, hearing and observing the veniremen directly and as individuals.... Because of the difficulty of the concepts and values which must be understood and applied by each juror in his deliberations, counsel for each side is entitled to an opportunity to assess the personality and comprehension of each prospect as a unique human being before accepting him as a juror or challenging him for cause or peremptorily." Dixon, supra, at 1312, 1313.
*1319 Admittedly, in Dixon, the Court was actually addressing the problem of "en masse" questioning; however, the same principle should apply to every voir dire examination and, as far as this writer is concerned, questioning 36 jurors at once is the equivalent of an "en masse" interrogation.
This writer well knows the advantage of being able to wisely and intelligently use the peremptory challenge and is of the opinion that counsel was not afforded this opportunity due to the size of the panel.
For these reasons, I respectfully dissent.

ON REHEARING
MARCUS, Justice.
We granted a rehearing to reconsider defendant's contention that the trial judge erred in overruling his objection to the examination of thirty-six jurors at the same time. Defendant argues that his right to full voir dire examination of prospective jurors as guaranteed by La.Const. art. 1, § 17 was circumvented by the method employed by the trial judge in the selection of the jury.
At the commencement of the selection of the jury, thirty-six prospective jurors (three panels of twelve) were brought into the courtroom and seated by panels in alphabetical order in the first three rows of the audience section of the courtroom. Thereafter, the jurors were sworn and the court examined them collectively relative to any relationship between the jurors and defendant, defense counsel, the victim and the assistant district attorney, the jurors' ability to render an impartial verdict according to the law and the evidence, the state's burden of proving defendant's guilt beyond a reasonable doubt, and defendant's presumption of innocence. The court then informed counsel that all thirty-six jurors would be examined at the same time after which the court would draw one juror at a time by lot from the panel of thirty-six. After each juror was called, the state and the defense would be permitted to either challenge or accept the juror. Defense counsel objected, noting that such a procedure would limit his ability to properly examine the prospective jurors. The objection was overruled. The state then proceeded to examine the jurors. Twice during the examination, defense counsel requested the state to "slow down" because of his inability to "keep up." After the state completed its examination, defense counsel proceeded to examine the prospective jurors. At one point during his examination, defense counsel inquired of the court whether he would be afforded an opportunity to further question the twelve jurors selected by lot from the panel of thirty-six. The court replied in the negative stating that: "This is it." Defense counsel completed his examination of the prospective jurors. At the conclusion of his examination, the trial court proceeded to draw one juror at a time by lot from the panel of thirty-six. After each juror was called, the state and the defense were afforded the opportunity to either challenge or accept the juror. No further questioning was allowed. This procedure was followed until twelve jurors and two alternates were chosen and sworn.
La.Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." We have recognized that the purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Jackson, 358 So.2d 1263 (La.1978). Because of the difficulty of the concepts and values which must be understood and applied by each juror in his deliberations, counsel for each side is entitled to an opportunity to assess the personality and comprehension of each prospect as a unique human being before accepting him as a juror or challenging him for cause or peremptorily. State v. Dixon, 365 So.2d 1310 (La.1978). As noted in the Official Revision Comment (c) to La.Code Crim.P. art. 784:
Details such as whether the jurors should be called singly or by groups of two, three, etc., are left to the court's discretion. The court can and should regulate such matters; statewide uniformity on the subject has never existed and is not necessary.
While the method for selecting a petit jury is within the court's discretion, the procedure cannot be such as to deny an accused his constitutional right to "full voir dire examination of prospective jurors."
We consider that the method employed by the trial judge in selecting the *1320 jury in the instant case denied defendant a meaningful voir dire examination of prospective jurors. Defense counsel's requests during the examination that the process be slowed down because of his difficulty in managing the information reflect some of the problems involved. By the time the examination was completed and defense counsel was afforded the opportunity to exercise his challenges, it was difficult, if not impossible, to remember what responses were given by each of the thirty-six jurors, much less the manner in which they were given. Hence, the right of counsel to probe into the prospective jurors' understanding and attitudes concerning pertinent legal issues and to assess their personalities as individuals was effectively denied. By so conducting the voir dire examination, defendant was hindered in the discovery of bases for challenges for cause and the securing of information for an intelligent exercise of peremptory challenges. Thus, defendant was denied his right to full voir dire examination of prospective jurors as guaranteed by La.Const. art. 1, § 17. Under the facts and circumstances of this case, we conclude that the trial judge abused his discretion by requiring the examination of thirty-six jurors at the same time. Accordingly, we must reverse defendant's conviction and sentence and remand the case to the trial court for a new trial.

DECREE
For the reasons assigned, defendant's conviction and sentence are reversed and the case is remanded to the trial court for a new trial.
WATSON, J., dissents being of the opinion that while the procedure was poor, no prejudice to defendant has been shown.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The "right to full voir dire" afforded by La.Const. Art. I, § 17 (1974) is not addressed to the number of jurors examined. Rather, that constitutional provision, as construed by this court, protects the right of counsel to address directly the prospective jurors and to pose questions which assure both the intelligent exercise of peremptory challenges and the exposure of valid bases for challenges for cause. Because the procedure followed by the trial court was sufficient to assure protection of these rights, I cannot find an abuse of discretion.
While the trial court in this case made a laudable effort to expedite selection of the jury, counsel was still afforded unlimited time for questioning, and there was absolutely no curtailment or restriction of the voir dire examination. Indeed, counsel's only complaint on the record was that the prosecutor proceeded too fast. In my opinion the trial court did not place an unreasonable burden on defense counsel (or the prosecutor) by adopting a practice which undoubtedly required counsel to take notes during the examination for use during the later tendering of jurors back and forth for acceptance or challenge.
In an era when the criminal justice system is under increasing pressure to keep abreast of an evergrowing volume of cases, this court should be very hesitant to discourage (as we are doing here) innovative practices which facilitate prompt trial of criminal cases.
I would affirm the conviction.
NOTES
[*] Judges Chiasson, Edwards and Lear of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon, Justices Marcus, Blanche and Lemmon.
[1] LSA-C.Cr.P. art. 802 provides, in pertinent part, as follows:

"The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the questions of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and ..." (Emphasis added.)
[2] According to Detective Bihm's testimony, the evidence had been misfiled and was not available earlier.