STATE OF LOUISIANA

VERSUS

IVORY D. FRANKLIN AKA "DEUCE"

NO. 23-KA-524

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-5061, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

August 28, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Scott U. Schlegel, and Timothy S. Marcel

**AFFIRMED**
    **TSM**
    **MEJ**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
  Honorable Paul D. Connick, Jr.
  Thomas J. Butler
  Matthew R. Clauss

COUNSEL FOR DEFENDANT/APPELLANT,
IVORY D. FRANKLIN, II A/K/A DEUCE
  Bertha M. Hillman

**MARCEL, J.**

Defendant, Ivory D. Franklin, II, appeals his convictions and sentences for second degree murder in violation of La. R.S. 14:30.1 and attempted second degree murder in violation of La. R.S. 14:27:30.1. The trial court sentenced defendant to life imprisonment on count one, second-degree murder, and forty years consecutive imprisonment as to count two, attempted second-degree murder. For the following reasons, defendant's convictions and sentences are affirmed.

## PROCEDURAL BACKGROUND

This appeal follows defendant's third trial. On August 11, 2016, a Jefferson Parish Grand Jury returned a two-count true bill of indictment charging Ivory D. Franklin, II a/k/a "Deuce" with second degree murder of Reginald Black, a violation of La. R.S. 14:30.1, and attempted second degree murder of Jamaaj Johns, a violation of La. R.S. 14:27:30.1. Defendant pled not guilty at his arraignment on August 12, 2016.

In October 2017, defendant's first trial ended in a mistrial after the jury was unable to reach a verdict. Defendant was tried a second time in June 2018 and was found guilty as charged by non-unanimous verdicts. Following those verdicts and denial of defendant's Motion for Judgment Notwithstanding the Verdict and Motion for New Trial, the trial court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence on count one and imprisonment at hard labor for forty years on count two, with the sentences to run consecutively. Defendant's Motion to Appeal Conviction and Sentence was granted on September 17, 2018. In defendant's first appeal, we vacated defendant's convictions and sentences and remanded the matter for a new trial pursuant to *Ramos v. Louisiana.*[1] *State v. Franklin*, 19-119 (La. App. 5 Cir. 9/9/20), 303 So.3d 379, *writ denied*, 20-1137 (La. 12/22/20), 307 So.3d 1026.

---

[1] *Ramos v. Louisiana,* 590 U.S. 83, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020).

Prior to defendant's third trial on remand, pre-trial motions were filed by both the State and the defendant. A pre-trial motion in limine was filed by the State to prohibit the parties from any reference to, cross-examination regarding, or any extrinsic evidence of Jamaaj John's juvenile record. The trial court granted the State's motion. Defendant moved the court to limit the jury venire to twenty-one prospective jurors per panel. The trial court denied defendant's motion.

The case proceeded to jury trial on March 28, 2023. On March 29, 2023, the twelve-person jury reached unanimous verdicts of guilty on both counts. Defendant filed motions for post-judgment verdict of acquittal, new trial, and appeal on April 4, 2023. On the following day, defendant filed supplemental motions for post-verdict judgment of acquittal and new trial.

On July 18, 2023, the trial judge denied defendant's motions for post-verdict judgment of acquittal and for new trial, then proceeded to sentence defendant to "life without benefit of probation parole or suspension to sentence" on count one and imprisonment at hard labor for forty years without benefit of parole, probation, or suspension of sentence on count two, with both sentences to run consecutively. Thereafter, defendant urged an oral motion to reconsider the sentences, which the trial court denied. The trial court granted defendant's written Motion for Appeal after denial of the oral motion to reconsider sentences. This appeal follows.

## FACTS

In the early morning hours on May 5, 2016, seventeen-year-old Reginald Black (Black) was fatally shot in the back of his head while walking alongside a canal with his eighteen-year-old friend, Ivory Franklin, II (defendant), and fifteen-year-old nephew, Jamaaj Johns (Johns).

At trial, Johns testified that he was awakened at approximately 2:00 a.m. by his uncle, Black, preparing to leave the house. Black stated that he was going to the store with "Deuce" to buy snacks and a cigar so they could smoke marijuana.

Defendant was known to Johns as "Deuce." Johns and Black left the house. Black was in possession of Johns' grandmother's gun. They met defendant near a canal, where Johns recalled defendant showing them his revolver. The three started walking alongside the canal in a line. Johns recalled that Black was in front, defendant in the middle, and he was in the rear. As they walked, Black asked defendant for a lighter. Johns recounted that defendant moved like he was retrieving a lighter, but instead, he took out his gun and shot Black in the back of the head. Black immediately fell to the ground.

Afterwards, Johns testified that defendant starting shooting at him. He ran from defendant, toward an abandoned house trying to get back home. As he was running, Johns looked backwards and saw that defendant was getting closer and still shooting at him. As Johns crossed the canal, running from the defendant, he saw a bullet fly past his head and hit the concrete. He eventually came upon a house with lights on and knocked on the door. Johns asked the individual answering the door to call the police. When law enforcement arrived, he recalled being searched and placed into the police car. An officer drove him to the canal, where he waited in the car. Johns recalled that officers later took him to the Jefferson Parish Sheriff's Office Detectives Bureau where he told them what happened. At the bureau, he was shown two sets of photographs and he positively identified defendant as the perpetrator.

Johns testified that Black and defendant were friends and never knew defendant and Black to have problems with each other but recalled that Black was having a dispute with his friends about a firearm being stolen. In his trial testimony, Johns acknowledged that he was participating in a Jefferson Parish diversion program based on a charge of possession with intent to distribute marijuana from an arrest on October 28, 2021.

Clay Roberts (Roberts) testified that he lived at 2236 Westmere Street in Harvey, Louisiana on May 5, 2016. At approximately 3:00 a.m. that morning, he heard noises coming from the front door of his home. He recalled a nervous and frightened young man standing on his porch. The young man, later identified as Jamaaj Johns, said that someone shot and killed his brother and that person was trying to kill him as well. Roberts refused Johns' request to enter his house, but called 9-1-1. Afterwards, Roberts returned to the door and told the young man that the police were on their way. He observed the lower part of Johns body was soaked with water.

After calling 9-1-1, Roberts testified that Johns began panicking and started hitting the door harder, kicking and pushing up against it. This led Roberts to retrieve his gun and call 9-1-1 a second time, fearing Johns was trying to break into his home. Johns was on the porch when law enforcement arrived. When the police pulled up, Johns walked over and talked to them.

The Jefferson Parish Sheriff's Office deputies responding to the May 5, 2016 9-1-1 call from 2236 Westmere testified at trial. Deputy Jason Pryor testified that he spoke with Johns upon arrival. He described Johns as scared and soaking wet. After searching Johns for officer safety, he placed him in his police unit, and drove to 3905 Woodmere, where he parked and left Johns secured in his unit. Deputy Pryor recalled walking to the canal bank where he observed a lifeless body, which was later identified as Black. Near Black's body were a 709 Taurus 9 mm handgun and a .380 Winchester shell casing. Deputy Pryor recalled the handgun was loaded, with one bullet in the chamber and a full magazine. Black's hand was in his pocket along with his cell phone. Deputy Pryor observed a mark on the palm of Black's hand and a broken, unlit cigarette next to his hand.

Deputy Glenn Webber testified that Johns was frantic and soaking wet. He recalled Johns telling him that someone shot at him and his friend. Deputy Webber

accompanied Deputy Pryor to the canal bank where they located Black's body. Deputy Webber testified to finding a projectile strike mark on the concrete on the west side of the canal which he believed was made that night due to the dust and broken concrete around it.

Detective Anthony Buttone of the Jefferson Parish Sheriff's Office testified that defendant's cell phone data was plotted on a map to determine his location before and after the time of the homicide. Based on the time of the original 9-1-1 call and an area map, defendant made outgoing phone calls near the area of the homicide on May 5, 2016 at 2:35 a.m., 2:51 a.m., and 2:52 a.m. Detective Melvin Francis of the Jefferson Parish Sheriff's Office testified that Black's cell phone records were searched. The content of those records disclosed that Black was fearful of his life and he knew that someone wanted to kill him. The phone records also showed that Black was going to meet defendant on May 5, 2016. A message on Black's phone dated April 19, 2016 indicated that defendant had access to a revolver.

Emily Terrebonne, a firearms examiner formerly employed with the Jefferson Parish Crime Lab, was accepted as an expert in the field of firearms and tool mark examinations. Terrebonne testified that she examined a .380 auto caliber fired cartridge case from the crime scene along with a copper jacket and multiple fragments from Black's autopsy. The examination revealed the copper jacket was consistent with .38 class ammunition and had been fired from the barrel of a firearm having six lands and grooves with a right twist. Based on her examination, Ms. Terrebonne testified the .380 auto caliber casing was not fired from the 9 mm Taurus pistol found on the scene.

Dr. Timothy Scanlan was accepted as an expert in the fields of crime scene reconstruction and firearm and toolmark examination. Based on the projectile found in the victim and the strike mark found on concrete across the canal, Dr.

Scanlan stated at least two gunshots were fired for which there were no casings. Dr. Scanlan stated those shots were most likely fired from a revolver. He also described concrete damage on the east bank of the canal consistent with a projectile trajectory originating from the left side of the canal traveling in an easterly direction. Dr. Scanlan pointed out that Johns testified that he crossed the canal from the west side to the east side. Dr. Scanlan testified that his crime scene reconstruction was consistent with Johns' testimony of what occurred, and inconsistent with Johns holding a gun to defendant's head and the gun being slapped away

Defendant's sister, Kia Lawson (Lawson), testified that Black was her former boyfriend. She recalled speaking and exchanging text messages on May 4 and 5, 2016 with Black concerning plans to hang out together. According to Lawson, Black read her messages prior to 1:57 a.m. but two messages she sent between 1:57 a.m. and 3:05 a.m. were unread. One of the last text messages from Black was that he was waiting to meet with defendant. Later that night, she received a phone call from defendant, who told her that he loved her and to not say anything if anyone called asking for his name.

At trial, defendant testified he did not have a gun and did not intentionally shoot Black on May 5, 2016. In his testimony, defendant asserted that there were no problems between he and Black. Defendant recalled meeting Black and Johns on the street by an abandoned building that morning. He described Black and Johns moving sluggishly, smelling of marijuana and looking high. After greeting Black, defendant recalled that Black and Johns showed him their guns. They proceeded toward the canal through a shortcut, where they intended to smoke marijuana. He stated that he had never been convicted of a crime and that he never had, owned, or used a gun.

While walking, defendant recounted that Johns started waved his semi-automatic gun around, saying he wanted to shoot it. He testified that Black turned his head and told Johns to stop playing with the gun. After hearing the hammer cock, defendant also turned back and told Johns to stop playing with the gun. Then, defendant recalled, Johns aimed the gun at his head. Defendant testified the gun accidentally discharged when he pushed it away from his direction, and Black fell to the ground. Johns subsequently took off running and fell into the water when trying to jump over the canal. Defendant testified that also he ran towards the canal in fear but he was not chasing Johns.

Later, defendant testified to calling his cousin, Baron Clofer, to ask that he pick him up. He then ran to his Aunt Courtney's house. Defendant admitted calling his sister and telling her that he loved her and that if anyone asked for his name to tell them she did not know anything. He also testified that his sister later told him of a television news report that he was wanted for murder and attempted murder. Defendant turned himself in to the police the next day. He maintained that he felt badly and was in shock about the death of Mr. Black, who was his close friend.

## DISCUSSION

In this appeal, defendant presents three assignments of error. The first assignment of error asserts that the trial court erred in granting the State's motion in limine to exclude evidence of Johns' juvenile record. In his second assignment of error, defendant avers that the trial court erred in denying his motion in limine to prohibit the attorneys from conducting *voir dire* panels of thirty-nine potential jurors. Defendant's third assignment of error contends that the trial court erred by denying his motion for mistrial.

## Assignment of Error Number One

In his first assignment of error, defendant argues that the trial court erred by granting the State's motion in limine to exclude evidence of Johns' juvenile criminal record. He asserts the credibility of defendant and of Johns was relevant to the outcome of this case because they accused each other of the murder and were the only witnesses. Defendant contends the State's interest in protecting the anonymity of juvenile offenders is inapplicable to the instant case. Supporting his contention, defendant points out that Johns had already testified in defendant's prior two trials as a juvenile and Johns' juvenile record was already a matter of public record. Consequently, defendant argues that the State had no policy interest in protecting Mr. Johns' juvenile record in the instant case.

The State's Notice of Additional Information filed on March 20, 2023 reported Johns had an open case currently being prosecuted by the Jefferson Parish District Attorney's Office, and that he was enrolled in the diversion program. Additionally, the Notice also states that the disposition of Johns' case was not predicated upon his participation in the instant case as a victim and witness or in any other case being handled by the district attorney's office. The State also asserted that Johns, as a juvenile, had been previously adjudicated delinquent of attempted simple burglary of an inhabited dwelling, possession of burglary tools, simple robbery, simple battery of a school teacher, aggravated battery, and possession of a handgun by a juvenile. His juvenile parole was successfully terminated, and his juvenile matters were closed in June 2020. The State maintained that none of Johns' juvenile adjudication outcomes or negotiated pleas were predicated upon his participation as a victim and witness in the instant case or in any other case handled by the district attorney's office.

Also on March 20, 2023, the State filed a Motion in Limine asking the trial court to bar the parties from any reference to, cross-examination regarding, or any extrinsic evidence of Johns' juvenile record or the details of his adult arrest. In it, the State argued that Johns' adult arrest and his juvenile adjudications were not proper impeachment evidence. The State also argued that Johns' juvenile record and the details of his adult arrest were irrelevant to the instant case and any probative value was outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue consumption of time. While Johns' juvenile record was admissible during defendant's prior trials because there were pending dispositions at that time, the State contends, his juvenile record was not admissible as impeachment evidence in this trial. Defendant filed an Objection to States Motion in Limine on March 27, 2023. In his Objection, he argued the right to cross-examine regarding Johns' possible bias in the case and that Johns' juvenile adjudications were relevant and admissible.

At that hearing on the State's Motion in Limine, the State pointed out that juvenile adjudications were not admissible under La. C.E. art. 609.1 because they were not convictions. In the two prior trials, Johns' juvenile charges were pending. As such, the State contends a witness having open charges – whether as an adult or a juvenile – creates a potential bias for the witness testifying. The State reported that Johns' juvenile charges had been resolved, and that he is no longer under supervision. Concerning Johns' pending possession with intent to distribute marijuana charge as an adult, the State reported that Johns was in the diversion program, and it did not object to admitting evidence of his open adult criminal charges.

Defendant contends the Sixth Amendment's confrontation clause requires the admissibility of evidence of Johns' juvenile record. He points out that Johns testified about his juvenile record at the first two trials and evidence of that record

should be admissible at the third trial. Being a crucial State's witness, defendant contends that Johns should be cross-examined on the existence of possible biases, prejudices, and ulterior motives. Defendant explained that this would give the jury a basis to assess Johns' character and truthfulness.

In its ruling after hearing arguments of counsel, the trial court stated: "All right. I will allow you to do the diversion case, but because it's a juvenile case, as such, I'm going to grant their Motion in Limine as it applies to that." Defendant's objection to the trial court's ruling was noted on the record.

The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront witnesses against him. *State v. Coleman*, 13-942 (La. App. 5 Cir. 05/14/14), 142 So.3d 130, 135-36, *writ denied*, 14-1224 (La. 1/23/15), 159 So.3d 1056. This right of confrontation is not unlimited, however, and guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. *Id.* at 136. The trial court has discretionary power to control the extent of the examination of witnesses, provided that the court does not deprive the defendant of his right to effective cross-examination. *State v. Alfaro*, 13-39 (La. App. 5 Cir. 10/30/13), 128 So.3d 515, 530, *writ denied*, 13-2793 (La. 5/16/14), 139 So.3d 1024. A trial court's rulings as to the scope and extent of cross-examination should not be disturbed on appeal absent an abuse of the court's broad discretion. *Coleman*, 142 So.3d at 136.

The Louisiana Code of Evidence permits a witness to be cross-examined on any matter relevant to any issue in the case, including credibility. La. C.E. art. 611(B). We recognize that impeaching a witness for bias or interest and exposing a witness' motivation in testifying are proper functions of cross-examination. *Coleman, supra.* However, evidence of a witness' prior juvenile adjudication is

generally not admissible to attack the witness' credibility. *State v. Nguyen*, 04-321 (La. App. 5 Cir. 9/28/04), 888 So.2d 900, 911, *writ denied*, 05-220 (La. 4/29/05), 901 So.2d 1064 (citing La. C.E. art. 609.1(F)). The Louisiana Supreme Court has held the statutory right of juvenile confidentiality is eclipsed where its disclosure is essential to a fair trial. *State v. Toledano*, 391 So.2d 817, 820 (1980). This standard entails a balancing test to determine whether the impeachment value of the adjudication is outweighed by the State's interest in maintaining the confidentiality of juvenile records. *Nguyen*, *supra*.

In *State v. Williams*, 18-112 (La. App. 5 Cir. 11/7/18), 259 So.3d 563, 576-77, *writ denied*, 18-2038 (La. 4/22/19), 268 So.3d 295, the defendant argued that the trial court's refusal to allow the defense to cross-examine a witness on his prior juvenile adjudications constituted reversible error. We noted that defense counsel did not proffer any court records or other evidence under La. C.E. art. 103,[2] to show that further information on this issue was relevant to the case or that further cross-examination would have helped the defense. Accordingly, we found no abuse of the trial court's discretion in refusing to allow the defense to cross-examine the witness on his prior juvenile adjudications.

In *Nguyen*, *supra*, the defendant argued that the trial court erred in prohibiting him from cross-examining a key witness regarding juvenile offenses unless defense counsel could demonstrate that such questioning would be

---

[2] La. C.E. art. 103 provides:
    A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
    (1) Ruling admitting evidence. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection; or
    (2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
    B. Record of ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon.
    C. Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or asking questions in the hearing of the jury.

probative of bias on the witness' part.  We found that the trial court did not abuse its discretion in this regard, pointing out that the defendant failed to provide a valid basis for questioning the witness about her juvenile offenses and failed to offer any records or evidence that established that further information of the issue was relevant to the case or would have helped the defense.

In the instant case, we find that the trial judge did not err by granting the State's Motion in Limine to exclude evidence of Johns' juvenile criminal records to attack his credibility.  We recognize defendant has a right to confront witnesses.  However, as in *Williams*, defendant in the instant case did not proffer any court records or other evidence under La. C.E. art. 103, to show that further information on this issue was relevant to the case or that further cross-examination would have helped the defense.  Also, as in *Nguyen*, defendant in this case failed to provide a valid basis for questioning the witness about his juvenile offenses and failed to offer any records or evidence establishing the relevancy of the subject matter to the case or demonstrating how the subject matter would have helped the defense.  This assignment does not have merit.

### *Assignment of Error Number Two*

The second assignment of error raised by defendant arises from the jury selection process in this case.  Defendant avers that the trial court erred by denying defendant's motion in limine to prohibit the attorneys from conducting *voir dire* of all thirty-nine prospective jurors at one time rather than in panels.  Fourteen jurors were seated in the jury box, and the remaining twenty-five jurors were seated behind the attorneys in rows behind the bar during questioning.  Defendant argues this configuration prevented observation of prospective jurors' facial expressions, body language, and demeanor during *voir dire*.  These observations, he contends, are the most important tool in selecting jurors.

On March 27, 2023, defendant filed a Motion to Limit Voir Dire to 21 Prospective Jurors Per Panel on which a hearing was conducted on the same date. At that hearing, the trial judge opined that observing the entire thirty-nine-member panel would be difficult but not impossible, noting that defense counsel had done it before. The trial judge also stated that in previous criminal jury trials following the same jury selection procedure, he did not limit *voir dire* and that counsel could turn around and direct a question to each of the jurors. Defendant's motion in limine was denied, as was his subsequent request to take a writ.

The Sixth Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury. *State v. Anderson*, 06-2987 (La. 9/9/08), 996 So.2d 973, 995, *cert. denied*, 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009). La. Const. Art. I, § 17 guarantees the right to full *voir dire* examination of prospective jurors and to challenge those jurors peremptorily. *Id.*

Pursuant to La. C.Cr.P. art. 786, the court, the state, and the defendant, shall have the right to examine prospective jurors. The purpose of *voir dire* is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. *State v. Housley*, 05-502 (La. App. 5 Cir. 1/31/06), 922 So.2d 659, 662, *writ denied*, 06-1183 (La. 11/17/06), 942 So.2d 531. The trial court is given broad discretion in regulating the conduct of *voir dire*, and its ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. *State v. Bravo*, 16-562 (La. App. 5 Cir. 4/12/17), 219 So.3d 1213, 1219.

The decision to call jurors in groups rather than individually is a matter within the trial court's discretion. *State v. St. Amant*, 413 So.2d 1312, 1314 (La. 1981) (citing *State v. Hegwood*, 345 So.2d 1179 (La. 1977)). In *Hegwood*, the Supreme Court found that the examination of prospective jurors in groups does

not, in the absence of special circumstances, deny a defendant a fair trial. *St. Amant*, 413 So.2d at 1314 (citing *Hegwood*).

In *State v. Williams*, 383 So.2d 996 (La. 1979), cited in *St. Amant*, the supreme court reviewed a *voir dire* examination during which twenty-four jurors were interviewed at one time. The Supreme Court found that the trial judge did not abuse his discretion in permitting the examination of jurors in this manner. Further, the Supreme Court pointed out that no special circumstances existed since the defendant extensively examined the prospective jurors individually and collectively. *Id.* at 999.

In *St. Amant*, *supra*, the defendant argued that the trial judge erred by having three jury panels, consisting of a total of thirty-six people, interrogated at the same time. During *voir dire* the venire of thirty-six persons was seated in the first three rows of the audience area of the courtroom. Defense counsel objected to this procedure and requested that potential jurors be questioned in groups no larger than twelve. The trial court overruled this objection and proceeded with the *voir dire* examination. *St. Amant*, 413 So.2d at 1313.

On appeal, defense counsel asserted that the purpose of jury interrogation was to afford the State and the defense an opportunity to make an intelligent selection of jurors. He further asserted that the selection process was hampered when the interrogator gets no real chance to experience a face-to-face contact with the party interrogated. Counsel contended this denied the defendant the right to fully participate in *voir dire*. *Id*. at 1313-14. The Supreme Court rejected this argument, holding that the defendant failed to show that the trial judge abused his discretion. *Id.* at 1314. While recognizing the record reflected some problems were caused by the size of the jury panel that was questioned, no special circumstances were found that denied defendant a fair trial. *Id.* The Supreme Court also pointed out that defense counsel was allowed to extensively examine

the prospective jurors, both individually and collectively, as was done in *Williams*. *Id.*

In the instant case, we find that the trial judge did not abuse his discretion by denying defense counsel's Motion to Limit Voir Dire to 21 Prospective Jurors Per Panel. Defense counsel had conducted *voir dire* in this manner previously, and could utilize the services of his co-counsel during *voir dire*. The transcript of the *voir dire* proceedings reflects that no special circumstances existed as defense counsel was allowed to extensively examine all prospective jurors, both individually and collectively, as was done in *Williams* and *St. Amant*. In light of the foregoing, this assignment of error does not have merit.

### Assignment of Error Number Three

In his third assignment of error, defendant argues that the trial court erred by denying his motion for a mistrial. He contends that during his cross-examination, the prosecutor improperly commented twice on his right to remain silent thereby infecting the trial with highly prejudicial remarks, and depriving the jury of its ability to fairly assess the guilt or innocence of defendant. We disagree.

The first exchange at issue occurred during the cross-examination of defendant regarding when he knew that Johns had a .380 revolver:

> Q. And you mentioned that - - that you've testified at a prior proceeding in this case, correct?
>
> A. Yes, sir.
>
> Q. And that was the first time anyone heard your version of what happened; is that right?
>
> A. This is the third trial.
>
> Q. I'm asking just that you didn't tell the police what happened?

Defense counsel then lodged an objection, and a bench conference was held. Counsel told the trial judge that defendant had the right to remain silent and the

right to keep his silence until trial. He argued the question inferred the defendant was guilty of being silent and the prosecutor had lured defendant into making that statement. The trial judge disagreed with the characterization, recalling the prosecutor did not lure defendant into anything, and found defendant was unresponsive to the question, and defendant voluntarily made the statement on his own.

The prosecutor argued that defendant waived his right by taking the stand and that the State was entitled to explore when defendant came up with this story. He pointed out that defendant's failure to tell anybody about what occurred at the time of the murder was significant. In response, defense counsel argued that defendant testified that he told Mr. Clofer and his previous attorney what occurred on the night of the incident.

After argument, the trial judge overruled defense counsel's objection, finding the prosecutor did nothing to cause a mistrial. He pointed out that the prosecutor had the right to explore on cross-examination defendant's entire conversation with Mr. Clofer as to what defendant told Mr. Clofer, when defendant told him, and how much defendant told him. He further stated, "That response was totally given by your client unresponsive to the question."

The second exchange at issue also occurred during the cross-examination of defendant and is set forth as follows:

> Q. It's your testimony that the night that Reginald was killed, you told your cousin, Baron, what happened, correct?
>
> A. Yes, sir.
>
> Q. But you did not - - and I think you testified on direct - - you didn't call the police?
>
> A. No, sir.
>
> Q. You didn't call Ms. Myrna that you considered like a second mother, correct?
>
> A. No, sir.

Q. You didn't - - and then once you found out that there was an arrest warrant for you, you turned yourself in?

A. Yes, sir.

Q. And you were represented by an attorney?

A. Yes, sir.

Q. And you did not tell any members of law enforcement what you say occurred that night, right?

Defense counsel then lodged an objection and moved for a mistrial, arguing that the prosecutor commented on defendant's right to silence. The prosecutor responded that defendant had already said he did not call the police. The trial judge found the prosecutor had gone further, bringing up the fact that defendant had counsel and did not talk to the police, which implicated defendant's Fifth Amendment right.

After the trial judge removed the jury, defense counsel argued that the State made reference to defendant's post-custodial silence, and therefore, the jury was tainted, and a mistrial should be granted. The prosecutor responded that he was only trying to show that defendant had a lot of time to come up with his version of events, and argued that the drastic remedy of a mistrial was unnecessary because an admonition to the jury would be sufficient to cure the problem.

The trial judge found that the prosecutor's remarks fell under La. C.Cr.P. art. 771, which required an admonition to the jury when requested by the defense or the State. The trial judge stated:

> Therefore, I believe under 771 - - I'll note your objection - - I don't believe that the remark was intended to elicit that he had an attorney and refused to give a statement or testify, he was alluding to when he came up or when this testimony was given. And I believe that - - that it was an inadvertent mistake but it didn't draw reference to the defendant not waiving his Fifth Amendment right because the defendant is testifying here today. So I believe an admonition to the jury, which basically tells the jury that there is no obligation - - and there shouldn't be any reference or any inference to the defendant's

rights. It's a Fifth Amendment right against self-incrimination. He doesn't have to do anything.

I've already told them that he doesn't have to call a witness, he doesn't have to testify, he doesn't have to produce any evidence and I'm going to go into the fact that they shouldn't refer, infer anything as an obligation in reference to guilt and they can't hold it against him in any way. I'll go through in length about that. And I'm going to direct them later on with the final jury charges.

Following his ruling, trial judge delivered a lengthy admonition to the jury in pertinent part as follows:

Ladies and gentlemen, what I'm going to do is I'm going to admonish you. Sometimes - - I've already told you what the lawyers say is not evidence, right? So anything in regards to questioning of the defendant in regards to his rights should not, in any way, be inferred against him. It shouldn't be held against him. Any references that are made by the lawyers, anything in the course of the questioning, I've already told you before, the defendant doesn't have to do anything. I've told you he doesn't have to produce any witnesses, he doesn't have to produce any evidence and he doesn't have to testify. And none of that can be inferred. None of that can be used as a reference to guilt. Nothing could be held against him in this trial.

This trial is going to be proven by the evidence presented by the state and nothing by the defense. Any reference that may have been made to anything that the defendant didn't do or did do has no, no bearing on this case that you are not, in any way, to consider. I'm going to instruct you to disregard that last question or any reference to that because as I've already told you in the preliminary instructions the defendant's rights and what he's required to do[.]

La. C.Cr.P. art. 775 provides that upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La. C.Cr.P. arts. 770 or 771. La. C.Cr.P. art. 770 provides the law regarding mandatory mistrials:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge,

district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;

> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

> (3) The failure of the defendant to testify in his own defense; or

> (4) The refusal of the judge to direct a verdict.

> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

La. C.Cr.P. art. 771 provides the law on admonitions as follows:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

> > (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

> > (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Reference to a defendant's silence at the time of his arrest and after he received the *Miranda*[3] warnings, for impeachment purposes, violates the defendant's due process rights. *Doyle v. Ohio*, 426 U.S. 610, 620, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle*, the Supreme Court explained, "[e]very post-arrest

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

silence is insolubly ambiguous because of what the State is required to advise the person arrested . . . it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle*, at 617-18, at 2244-45. *Doyle* prohibits the use of defendant's silence at the time of arrest and after *Miranda* warning for impeachment purposes. A prosecutor cannot make reference to the fact an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused for the first time at trial. *State v. Robinson*, 04-964 (La. App. 5 Cir. 2/15/05), 896 So.2d 1115, 1126 (citing *State v. Arvie*, 505 So.2d 44, 46 (La. 1987)).

However, not every mention of the defendant's post-arrest silence is prohibited by *Doyle*. An oblique and obscure reference to a defendant's post-arrest silence, where the examination does not stress the right to remain silent or attempt to elicit testimony regarding the defendant's failure to respond to police questioning does not constitute reversible error. *Robinson*, *supra*. Thus, the State may pursue a line of questioning that attempts to summarize the extent of the investigation, when such questions are not designed to exploit the defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense. *Id.*

Under La. C.Cr.P. art. 771, when the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. The trial court may, at its discretion, grant a mistrial upon determination that an admonition is not sufficient to assure the defendant a fair trial. *Robinson*, *supra* (citing *State v. Kersey*, 406 So.2d 555, 559 (La. 1981)). A brief reference to a defendant's post-arrest silence does not mandate a mistrial or reversal when the trial, as a whole,

was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes. *Id.*

*Doyle* violations are characterized as trial errors, subject to a harmless error analysis. *State v. Duong*, 13-763 (La. App. 5 Cir. 8/8/14), 148 So.3d 623, 643, *writ denied*, 14-1883 (La. 4/17/15), 168 So.3d 395. Harmless error exists when "the verdict actually rendered was surely unattributable to the error." *State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94, 102 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).

As was set forth above, the first exchange in the instant case occurred when the prosecutor asked defendant if this was the first time anyone heard his version of what happened, and defendant responded, "[t]his is the third trial." The prosecutor's remark was not an improper comment on defendant's right to remain silent. Rather, defendant voluntarily gave an answer that was unresponsive to the question and he never actually answered the question the prosecutor asked him. Further, the prosecutor had the right to cross-examine defendant about his conversation with his cousin, Mr. Clofer, regarding the incident.

Also, as was set forth above, the second exchange in the instant case occurred when the prosecutor asked defendant if he did not tell the police about the incident after he obtained the services of an attorney. The prosecutor's question does not fall under Article 770, which requires a mandatory mistrial. Rather, the prosecutor's question falls under Article 771, which requires an admonition if requested. Here, the State requested an admonition, after which the trial judge provided the jury with a thorough and lengthy admonition to disregard the question, stressing that defendant did not have the obligation to do anything and that the jury could not hold that against him. Even if we were to find that there was a *Doyle* violation, any error was harmless.

In light of the foregoing, we find the trial court did not abuse its discretion by denying the motion for mistrial.

## ERROR PATENT DISCUSSION

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

La. C.Cr.P. art. 930.8 states in pertinent part, "No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922." The transcript reflects that the trial court gave an incomplete advisal of the provisions of La. C.Cr.P. art. 930.8. When the trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1021-22. Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

### DECREE

Accordingly, defendant's convictions and sentences are affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 28, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-KA-524**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)      THOMAS J. BUTLER (APPELLEE)      BERTHA M. HILLMAN (APPELLANT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053